**<u>Exhibit A</u>**

**Bidding Procedures Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| INDEPENDENT PET PARTNERS | ) |
| HOLDINGS, LLC, *et al.*,[1] | ) Case No. 23-10153 (LSS) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

**ORDER (I) SCHEDULING A HEARING ON THE APPROVAL OF THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES OTHER THAN ASSUMED LIABILITIES AND PERMITTED ENCUMBRANCES, AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (II) APPROVING CERTAIN BIDDING PROCEDURES AND ASSUMPTION AND ASSIGNMENT PROCEDURES, AND THE FORM AND MANNER OF NOTICE THEREOF, (III) APPROVING BIDDING PROTECTIONS, AND (IV) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of: (a) an order (this "Order"), (i) scheduling a hearing (the "Sale Hearing") on approval of the proposed sale (the "Sale") of all or substantially all of the Debtors' assets remaining after the completion of certain store closing sales (the "Assets"), free and clear of all Encumbrances other than Assumed Liabilities and Permitted Liens to IPP Buyer Acquisition, LLC (the "**Stalking Horse Purchaser**") or, in the event the Stalking Horse Purchaser is not the Winning Bidder, then to the Winning Bidder, and authorizing

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Independent Pet Partners Holdings, LLC (5913), Independent Pet Partners Intermediate Holdings I, LLC (4827), Independent Pet Partners Intermediate Holdings II, LLC (7550), Independent Pet Partners Employer Holdings, LLC (6785), Independent Pet Partners Employer, LLC (7531), Independent Pet Partners Intermediate Holdings, LLC (8793), IPP - Stores, LLC (6147), IPP Stores Employer, LLC (0847), Especially For Pets, LLC (6801), Pet Life, LLC (3420), Whole Pet Central, LLC (7833), Natural Pawz, LLC (5615), and Pet Source, LLC (1905). The corporate headquarters and the mailing address for the Debtors is 8450 City Centre Dr., Woodbury, MN 55125.

[2]  Capitalized terms used but not defined herein shall have the meanings given them in the Bidding Procedures (as defined below), or to the extent not defined therein, the Motion or the Stalking Horse APA.

the assumption and assignment of certain executory contracts and unexpired leases (each executory contract and unexpired lease that is assumed and assigned, a "Purchased Contract," and collectively, the "Purchased Contracts") in connection therewith; (ii) authorizing and approving certain bidding procedures for the Sale attached hereto as Exhibit 1 (collectively, the "Bidding Procedures"), authorizing and approving certain assumption and assignment procedures for the Purchased Contracts provided for herein (collectively, the "Assumption and Assignment Procedures"); (iii) approving the Expense Reimbursement provided by the Debtors to the Stalking Horse Purchaser in accordance with the terms and conditions set forth in the Stalking Horse APA and the Bidding Procedures; and (iv) granting related relief; and (b) an order (the "Sale Order"), (i) authorizing and approving the Debtors' entry into the Asset Purchase Agreement dated as of February 5, 2023, substantially in the form attached to the Motion as Exhibit B (the "Stalking Horse APA") with the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Winning Bidder, then an Alternative APA with the Winning Bidder; (ii) authorizing and approving the Sale, free and clear of all Encumbrances other than Assumed Liabilities and Permitted Liens; (iii) authorizing and approving the assumption and assignment of the Purchased Contracts in connection therewith; and (iv) granting related relief; and due and proper notice of the Motion having been given; and it appearing that no other or further notice of the Motion is required; and it appearing that this Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having reviewed the Motion; and the Bidding Procedures Hearing (as defined herein) having been held; and this Court having found and determined that the relief set forth herein is in the best interests of the

Debtors, their estates and creditors, and all parties in interest, and that the legal and factual bases

set forth in the Motion and at the Bidding Procedures Hearing, as applicable, establish just cause

for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it

is hereby

**FOUND AND DETERMINED THAT:[3]**

A.    This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§

157 and 1334 and the Amended Standing Order.

B.    Venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408

and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C.    The statutory and legal predicates for the relief requested in the Motion and

provided for herein are sections 105, 363, 365, 503 and 507 of title 11 of the United States Code,

11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2002-1 and 6004-1 of the

Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "Local Rules").

D.    In the Motion and at the hearing on the relief set forth herein (the "Bidding

Procedures Hearing"), the Debtors demonstrated that good and sufficient notice of the relief

granted by this Order has been given and no further notice is required. A reasonable opportunity

to object or be heard regarding the relief granted by this Order (including, without limitation, with

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law
pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the
extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the
extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

respect to the Bidding Procedures and the Expense Reimbursement) has been afforded to those parties entitled to notice pursuant to Bankruptcy Rule 2002 and all other interested parties.

E.      The Sale Notice (as defined herein), in substantially the form attached hereto as Exhibit 2, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of this Order, the Bidding Procedures, the auction for the Assets (the "Auction"), the Sale, and the Sale Hearing, and any and all objection deadlines related thereto, and no other or further notice is required of the foregoing.

F.      The Debtors have articulated good and sufficient business reasons for this Court to approve the Bidding Procedures, and the Bidding Procedures are: (i) fair, reasonable, and appropriate; and (ii) designed to maximize recovery with respect to the Sale.

G.      The Assumption and Assignment Procedures provided for herein and the Assumption Notice (as defined herein), in substantially the form attached hereto as Exhibit 3, are reasonable and appropriate and consistent with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006. The Assumption and Assignment Procedures and the Assumption Notice have been tailored to provide an adequate opportunity for all Counterparties (as defined herein) to assert any Contract Objections (as defined herein).

H.      The Debtors have articulated good and sufficient reasons and business justification for the Court to grant the relief requested in the Motion regarding payment of the Expense Reimbursement. The Expense Reimbursement, as approved by this Order, is fair and reasonable and provides a benefit to the Debtors' estates and stakeholders.

I.      If triggered in accordance with the terms of the Stalking Horse APA, the payment of the Expense Reimbursement under this Order and upon the conditions set forth in the Stalking Horse APA and the Bidding Procedures, is (i) an actual and necessary cost of preserving the

Debtors' estates, within the meaning of sections 503(b) and 507(a) of the Bankruptcy Code, (ii) reasonably tailored to encourage, rather than hamper, bidding for the Purchased Assets, by providing a baseline of value, increasing the likelihood of competitive bidding at the Auction, and facilitating participation of other bidders in the sale process, thereby increasing the likelihood that the Debtors will receive the best possible price and terms for the Purchased Assets, (iii) of substantial benefit to the Debtors' estate and stakeholders and all parties in interest herein because it encouraged the Stalking Horse Purchaser to submit the Stalking Horse APA and is a condition of the Stalking Horse APA, (iv) reasonable and appropriate, (v) a material inducement for, and conditions necessary to, ensure that the Stalking Horse Purchaser will continue to pursue its proposed agreement to purchase the Purchased Assets, and (vi) reasonable in relation to the Stalking Horse Purchaser's efforts and to the magnitude of the Sale Transaction and the Stalking Horse Purchaser's lost opportunities resulting from the time spent pursuing such transaction.

J.      Entry of this Order is in the best interests of the Debtors, their estates and creditors, and all other interested parties.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      Those portions of the Motion seeking approval of (a) the Debtors' entry into the Stalking Horse APA and all of its terms (subject to higher or otherwise better offers in accordance with this Order), (b) the Assumption and Assignment Procedures, (c) the Expense Reimbursement, (c) the marketing process and the Bidding Procedures, (d) the date and time of the Sale Hearing, and (e) the noticing and objection procedures related to each of the foregoing, including, without limitation, the notice of the Sale and the entry of this Order, substantially in the form attached hereto as Exhibit 2 (the "Sale Notice"), and the notice of the Debtors' potential assumption and assignment of executory contracts and unexpired leases that may be Purchased Contracts (the

"Potential Purchased Contracts"), substantially in the form attached hereto as Exhibit 3 (the "Assumption Notice") (subclauses (a) – (e) above, collectively, the "Bidding and Auction Process"), are hereby GRANTED to the extent set forth herein.

2.      Any objections to the Motion as it pertains to the Bidding and Auction Process or the relief granted by this Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.

3.      The Bidding Procedures are hereby approved. The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being this Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order. The Debtors are hereby authorized to conduct the Auction pursuant to the terms of the Bidding Procedures and this Order.

4.      The Debtors shall have the right, in their reasonable discretion and in consultation with the Consultation Parties, to withhold or limit access to any due diligence information that the Debtors determine is business-sensitive or otherwise not appropriate for disclosure to a Qualifying Bidder. Notwithstanding any prepetition limitations, including, without limitation, any non-disclosure, confidentiality, or similar provisions relating to any due diligence information, the Debtors and their estates shall be authorized to provide due diligence information to Qualifying Bidders, *provided* that such Qualifying Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtors. The Debtors and their estates are not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any Qualifying Bidders in connection with the Bidding Procedures or the Sale.

5.     For all purposes under the Bidding Procedures: (a) the Stalking Horse Purchaser shall be considered a Qualifying Bidder, and the Stalking Horse APA shall be considered a Qualifying Bid; (b) the Stalking Horse Purchaser is, and will be deemed to be, a Qualifying Bidder for all purposes under the Bidding Procedures, without regard to any of the requirements or conditions set forth herein and without any other or further action by the Stalking Horse Purchaser; and (c) in determining whether the Potential Bidders constitute Qualifying Bidders, the Debtors may consider a combination of bids for the Assets.

6.     The following "Assumption and Assignment Procedures" are hereby approved:

a.     On or before one (1) business day after the entry of this Order, the Debtors shall file with this Court and serve an Assumption Notice, via overnight delivery, on each counterparty to a Potential Purchased Contract (each, a "Counterparty," and collectively, the "Counterparties"). The Assumption Notice served on each Specified Commercial Contract Counterparty shall include notice that such party's Potential Purchased Contract is a Specified Commercial Contract that is subject to Section 2.6(b) of the Stalking Horse Purchase Agreement (or similar provision in an Alternative APA).

b.     The Assumption Notice shall include, without limitation, the cure amount if any, that the Debtors believe is required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code for each of the Potential Purchased Contracts (each, a "Cure Amount") in the event such Potential Purchased Contracts are assumed and assigned by the Debtors. If a Counterparty (including, without limitation, a Specified Commercial Contract Counterparty) objects to (i) the assumption and assignment of the Counterparty's Potential Purchased Contract (including, without limitation, on the basis that the Stalking Horse Purchaser cannot provide adequate assurance of future performance) or (ii) the Cure Amount for any of its Potential Purchased Contracts, the Counterparty must file with the Court and serve on the Objection Notice Parties (as defined herein) a written objection (a "Contract Objection") on or before the applicable objection deadline set forth in these Assumption and Assignment Procedures.

c.     Any Contract Objection shall: (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) be filed with the Clerk of the Court, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801 **on or before 5:00 p.m. (ET) on March 15, 2023** (the "Contract Objection Deadline"), and proof of service of such Contract Objection upon the Objection Notice Parties shall be filed with the Court as and when required

by the Local Rules; (iv) be served upon the Objection Notice Parties; and (v) state with specificity the grounds for such objection, including, without limitation, the fully liquidated Cure Amount and the legal and factual bases for any unliquidated Cure Amount that the Counterparty believes is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code for the Purchased Contract, along with the specific nature and dates of any alleged defaults, the pecuniary losses, if any, resulting therefrom, and the conditions giving rise thereto and any objection to the provision of adequate assurance of future performance by the Stalking Horse Purchaser.

d.    In the event that the Stalking Horse Purchaser is not the Winning Bidder, the deadline to object to the provision of adequate assurance of future performance by a Winning Bidder or Back-Up Bidder that is not the Stalking Horse Purchaser (a "Winning Bidder Adequate Assurance Objection") shall be **12:00 p.m. (ET) on March 22, 2023**, and any Winning Bidder Adequate Assurance Objections must be filed and served in the same manner as Contract Objections.

e.    The "Objection Notice Parties" are as follows: (i) counsel to the Debtors, McDonald Hopkins LLC, 300 North LaSalle Street, Suite 1400, Chicago, Illinois 60654 (Attn: David Agay, Esq. (dagay@mcdonaldhopkins.com), Marc Carmel, Esq. (mcarmel@mcdonaldhopkins.com), and Joshua Gadharf, Esq. (jgadharf@mcdonaldhopkins.com)); (ii) co-counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 1980 (Attn: Andrew Magaziner, Esq. (amagaziner@ycst.com)); (iii) counsel to any official committee of unsecured creditors appointed in the Chapter 11 Cases; (iv) counsel to the DIP Lenders, Dechert LLP, 1095 Avenue of the Americas, New York, New York 10036 (Attn: Shmuel Vasser, Esq. (shmuel.vasser@dechert.com) and Stephen Wolpert, Esq. (stephen.wolpert@dechert.com)), and co-counsel to the DIP Lenders, Richards, Layton & Finger, P.A., P.O. Box 551, Wilmington, Delaware 19899 (Attn: Russell Silberglied, Esq. (silberglied@rlf.com) and Brendan Schlauch, Esq. (schlauch@rlf.com)); and (v) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), 855 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Rosa Sierra-Fox).

f.    Within one (1) day after the cancellation or completion of the Auction, the Debtors shall file with the Court a notice identifying the Winning Bidder (a "Notice of Winning Bidder"), which shall set forth, among other things, (i) the Winning Bidder and Back-Up Bidder (if any) and the amount of each of the Winning Bid and the Back-Up Bid (if any), (ii) the Selected Purchased Contracts (as defined herein), and (iii) the proposed assignee(s) of such Selected Purchased Contracts, and serve the Notice of Winning Bidder by overnight mail and, if available, electronic mail, upon each affected Counterparty and its counsel (if known).

g.    At the Sale Hearing, the Debtors will seek Court approval of the assumption and assignment to the Winning Bidder of only those Potential Purchased Contracts, including, without limitation, Specified Commercial Contracts, that have been selected by the Winning Bidder to be assumed and assigned (each, a "Selected Purchased Contract," and collectively, the "Selected Purchased Contracts").

h.    Specified Commercial Contracts that are not designated as Selected Purchased Contracts in the Notice of Winning Bidder shall be subject to the procedures set forth in Section 2.6(b) of the Stalking Horse Purchase Agreement (or similar provision in an Alternative APA).

i.    If no Contract Objection is timely received with respect to a Selected Purchased Contract (including, without limitation, Specified Commercial Contracts that are designated as Selected Purchased Contracts in the Notice of Winning Bidder): (i) the Counterparty to such Selected Purchased Contract shall be deemed to have consented to the assumption by the Debtors and assignment to the Winning Bidder of the Selected Purchased Contract, and be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the Winning Bidder); (ii) any and all defaults under the Selected Purchased Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code; and (iii) the Cure Amount for such Selected Purchased Contract shall be controlling, notwithstanding anything to the contrary in such Selected Purchased Contract, or any other related document, and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Selected Purchased Contract against the Debtors and their estates or the Winning Bidder, or the property of any of them, that existed prior to the entry of the Sale Order.  If no Contract Objection is timely received with respect to a Specified Commercial Contract that is not designated as a Selected Purchased Contract in the Notice of Winning Bidder, the Specified Commercial Contract Counterparty to such Specified Commercial Contract shall be deemed to have consented to the assumption by the Debtors and assignment to the Winning Bidder of the Specified Commercial Contract in the event such contract is designated a Designated Contract prior to the expiration of the Designation Period under Section 2.6(b) of the Stalking Horse Purchase Agreement (or similar provision in an Alternative APA), and be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the Winning Bidder), subject only to the Specified Commercial Contract Counterparty's right to file a Supplemental Contract Objection to its Updated Proposed Cure Amount under Section 2.6(b) of the Stalking Horse Purchase Agreement (or similar provision in an Alternative APA).

30100226.1

j.  To the extent that the Debtors and a Counterparty are unable to consensually resolve any such Contract Objection prior to the commencement of the Sale Hearing, such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be determined by the Debtors, in consultation with the Winning Bidder, or otherwise fixed by the Court. In the case of a Contract Objection filed by a Specified Commercial Contract Counterparty with respect to a Specified Commercial Contract that is not designated as a Selected Purchased Contract in the Notice of Winning Bidder, the issues raised in the Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be determined by the Debtors, subject only to the Specified Commercial Contract Counterparty's right to file a Supplemental Contract Objection to its Updated Proposed Cure Amount under Section 2.6(b) of the Stalking Horse Purchase Agreement (or similar provision in an Alternative APA). To the extent that (i) the Debtors settle a Contract Objection or Supplemental Contract Objection or (ii) the Court enters an order resolving the Contract Objection or Supplemental Contract Objection, and such settlement or order is not acceptable to the Winning Bidder, the Winning Bidder shall have the option to designate the relevant Contract as no longer a Purchased Contract, in which case such Contract shall not be assumed by the Debtors or assigned to the Winning Bidder, and neither the Debtors nor the Winning Bidder shall be responsible for any Cure Amounts related to such Contract.

k.  Notwithstanding anything to the contrary herein, if, after the Sale Hearing or the entry of the Sale Order, additional executory contracts or unexpired leases of the Debtors are determined to be Purchased Contracts, as soon as practicable thereafter, the Debtors shall file with the Court and serve, by regular mail, on the Counterparties an Assumption Notice, and such Counterparties shall file any Contract Objections (including, without limitation, with respect to adequate assurance of future performance of the Winning Bidder and the Cure Amount) not later than fourteen (14) days thereafter. If no Contract Objection is timely received, the Debtors shall be authorized to assume and assign such Purchased Contracts to the Winning Bidder, without further notice to creditors or other parties in interest and without the need for further order of the Court, and such assumption and assignment shall be subject to the terms of the Sale Order.

7.  The Debtors' decision to assume and assign the Purchased Contracts to the Winning Bidder is subject to this Court's approval and the closing of the Sale. Accordingly, absent this Court's approval and the closing of the Sale, the Purchased Contracts shall not be deemed assumed or assumed and assigned and shall in all respects be subject to further administration by the Debtors and their estates under the Bankruptcy Code in connection with the Chapter 11 Cases.

8.     The Assumption and Assignment Procedures are appropriate and fair to all Counterparties and comply in all respects with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. The Assumption Notice is: (a) reasonably calculated to (i) provide sufficient, effective notice to all Counterparties and any other affected parties of the Debtors' intent to assume and assign to the Winning Bidder some or all of the Purchased Contracts and (ii) afford the Counterparties the opportunity to exercise any rights affected by the Motion and the relief granted by this Order pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006; and (b) hereby approved.

9.     The inclusion of a Contract on an Assumption Notice shall not constitute or be deemed a determination or admission by the Debtors or their estates or any other party in interest that such Contract is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and any and all rights of the Debtors and their estates with respect thereto shall be reserved.

10.     The Sale Notice, the Assumption Notice, the Bidding Procedures, the Auction, the Sale Hearing, and the Assumption and Assignment Procedures and the objection periods associated with each of the foregoing are reasonably calculated to provide notice to any affected party and afford the affected party the opportunity to exercise any rights affected by the Motion as it relates to the Bidding Procedures, the Auction, the Sale, the Sale Hearing, and the assumption and assignment the Winning Bidder of the Purchased Contracts pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006, and such notice and objection periods are hereby approved.

11.     The Sale Notice is approved. Within three (3) business days of the entry of this Order, the Debtors shall serve the Sale Notice by regular mail on: (a) the U.S. Trustee; (b) counsels to the Stalking Horse Purchaser, the Prepetition Agent (as defined in the DIP Order), and the DIP Agent (as defined in the DIP Order); (c) all parties known by the Debtors to assert a lien or

encumbrance on any of the Assets; (d) all persons known or reasonably believed to have asserted an interest in or claim to any of the Assets; (e) all persons known or reasonably believed to have expressed an interest in acquiring all or a substantial portion of the Assets within the one (1) year prior to the Petition Date; (f) the Office of the United States Attorney for the District of Delaware; (g) the Office of the Attorney General in each state in which the Debtors have operated; (h) the Office of the Secretary of State in each state in which the Debtors have operated; (i) the Internal Revenue Service and all state and local taxing authorities in the states in which the Debtors have or may have any tax liability; (j) the Federal Trade Commission; (k) all Counterparties to any of the Potential Purchased Contracts; (l) all of the Debtors' other known creditors and equity security holders; and (m) all other parties that have filed a notice of appearance and demand for service of papers in the Chapter 11 Cases as of the service date (collectively, the "Sale Notice Parties").

12.     The Debtors shall post the Sale Notice, the Assumption Notice, and the Bidding Procedures Order on the website of the Debtors' claims and noticing agent. Within seven (7) calendar days of the entry of this Order, the Debtors shall cause the Sale Notice to be published once in the national edition of USA Today or another nationally circulated newspaper, with any modifications necessary for ease of publication. Publication of the Sale Notice as described in this Order conforms to the requirements of Bankruptcy Rules 2002(l) and 9008 and is reasonably calculated to provide notice to any affected party, including, without limitation, any Potential Bidders, and afford the affected party the opportunity to exercise any rights affected by the Motion and the relief granted by this Order.

13.     In the event that a Winning Bidder does not consummate the Sale and a Backup Bidder has been previously identified, the Debtors shall (1) file and serve a notice of intent to proceed with a Backup Bid (a "Notice of Intent to Proceed with Backup Bid") and (2) schedule a

telephonic status conference, which may be expedited, upon reasonable notice under the circumstances, at which time a briefing and hearing schedule will be established for those landlords and Counterparties that do not consent to a proposed assumption and assignment to the Backup Bidder. The Backup Bidder, as identified in the Notice of Successful Bidder, shall not be considered or approved at the Sale Hearing, nor shall affected landlords or Counterparties be required to object to Backup Bidder prior to the filing and service of the Notice of Intent to Proceed with the Backup Bid.

14.    Any objections to the Sale or the relief requested in connection with the Sale (a "Sale Objection"), other than a Contract Objection, which shall be governed by the Assumption and Assignment Procedures, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of this Court, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801 **on or before 5:00 p.m. (ET) on March 15, 2023** (the "Sale Objection Deadline"), and proof of service of such Sale Objection upon the Objection Notice Parties shall be filed with the Court as and when required by the Local Rules; and (e) be served upon the Objection Notice Parties. If a Sale Objection is not filed and served on or before the Sale Objection Deadline in accordance with the foregoing requirements, the objecting party may be barred from objecting to the Sale and being heard at the Sale Hearing, and this Court may enter the Sale Order without further notice to such party.

15.    Failure to file a Sale Objection on or before the Sale Objection Deadline (a) may forever bar the assertion, whether at any Sale Hearing or thereafter, of any objection to the Motion, to entry of the Sale Order, and/or to the consummation and performance of the Sale contemplated by the Stalking Horse APA or any Alternative APA with a Winning Bidder other than the Stalking Horse Purchaser, and (b) for purposes of section 363(f)(2) of the Bankruptcy Code, shall be

deemed to be "consent" to entry of the Sale Order and consummation of the Sale and all transactions related thereto.

16.    No later than March 7, 2023, the Stalking Horse Purchaser must provide the Debtors (a) a list of its respective Selected Purchased Contracts (subject to the provisions of the Stalking Horse APA allowing the Stalking Horse Purchaser to amend the schedule of Purchased Contracts at any time prior to Closing); and (b) information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code, including, without limitation, the Qualifying Bidder's financial wherewithal and willingness to perform under any Purchased Contracts (the information set forth in subsection (b), "Adequate Assurance Information").

17.    No later than one (1) day after the later of (a) the date the Debtors receive the Adequate Assurance Information from the Stalking Horse Purchaser and (b) the date such Counterparty requests such information in writing from Brenda Walters at Young Conaway Stargatt & Taylor, LLP at bwalters@ycst.com, the Debtors shall provide such Adequate Assurance Information to each Counterparty that has requested such information.

18.    As part of their bid, by the Bid Deadline, each Qualifying Bidder must provide the Debtors with (a) a list of its respective Selected Purchased Contracts and (b) Adequate Assurance Information.

19.    By the later of (a) the date the Debtors file and serve the Notice of Winning Bidder and (b) one (1) day after the date such Counterparty requests such information in writing from Brenda Walters at Young Conaway Stargatt & Taylor, LLP at bwalters@ycst.com, the Debtors

shall provide Adequate Assurance Information of the Winning Bidder and Backup Bidder to all Counterparties that have requested such information.

20.     Any party in receipt of Adequate Assurance Information under this Order shall review the Adequate Assurance Information received on a confidential basis and shall not disclose the Adequate Assurance Information except as expressly provided in this Order and the Bidding Procedures. Such Counterparty may not use or disclose, except to representatives, attorneys, advisors, and financing sources (collectively, "Representatives"), any such Adequate Assurance Information for any purpose other than: (a) evaluating whether adequate assurance of future performance as required under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code has been provided; and (b) in support of any Contract Objection (subject to the limitations on disclosure set forth herein) by such Counterparty relating to adequate assurance of future performance. Any Contract Objection that includes confidential, non-public Adequate Assurance Information must be filed under seal unless disclosure of such confidential, non-public information is authorized by the Debtors and the applicable assignee(s). The party filing a Contract Objection under seal shall follow the procedures for the same set forth in Local Rule 9018-1(d). The unredacted versions of such Contract Objections shall be served upon the Debtors, the other Bidding Procedures Notice Parties, the Consultation Parties, and the U.S. Trustee, with a copy to the Court's chambers; *provided* that all rights of all parties in interest in the Chapter 11 Cases are reserved to oppose the filing under seal of any such information and to seek any other relief from this Court with respect to such matter. Any Representative receiving Adequate Assurance Information shall be notified and shall agree to be bound by the restrictions set forth in this Order.

21.     The Stalking Horse Purchaser shall be deemed to be a Qualifying Bidder and the Stalking Horse APA is deemed to be a Qualifying Bid. Subject to the DIP Order, the Stalking

Horse Purchaser is credit bidding pursuant to 11 U.S.C. § 363(k), and is not required to make a Deposit with the Debtors. The Stalking Horse Purchaser shall have the unqualified right at any time to credit bid on a dollar-for-dollar basis up to the full amount of the DIP Obligations (including, without limitation, the Rolled Up Prepetition Obligations) and the Prepetition Secured Obligations.

22.     If no timely Qualifying Bids other than the Stalking Horse APA are submitted on or before the Bid Deadline, the Debtors shall not hold an Auction and shall request at the Sale Hearing that this Court approve the Stalking Horse APA and the transactions contemplated thereunder. If the Debtors timely receive one or more Qualifying Bids other than the Stalking Horse APA, then the Debtors shall conduct the Auction on **March 20, 2023 at 10:00 a.m. (ET)**, at the offices of Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, or virtually via telephone and/or video conference pursuant to information to be timely provided by the Debtors to the Auction Participants (as defined herein). Only (i) the Debtors, (ii) the Auction Bidders (including, without limitation, the Stalking Horse Purchaser), (iii) the Consultation Parties, and (iv) any other creditors of the Debtors who desire to attend the auction and provide no less than five (5) days advance written notice, together with the professional advisors to each of the foregoing parties, may attend the Auction (collectively, the "Auction Participants"). Each Auction Participant shall provide prior written notice of their intent to attend the Auction to Brenda Walters at Young Conaway Stargatt & Taylor, LLP at bwalters@ycst.com.

23.     The Debtors and any other entity shall have until **one (1) business day prior to the Sale Hearing at 12:00 p.m. (ET)** to file and serve a reply to any objection filed in connection with the Sale, including, without limitation, any Sale Objection or Contract Objection.

24.     The Sale Hearing shall be held in this Court on **March [24], 2023 at [__]:[__] a.m. (ET)**, unless otherwise determined by this Court. The Sale Hearing may be adjourned by the Debtors, in consultation with the Winning Bidder and the consent of the DIP Lenders, from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, or by filing a hearing agenda or notice on the docket of the Chapter 11 Cases.

25.     Pursuant to sections 105, 363, 364, 503, and 507 of the Bankruptcy Code, the Debtors are hereby authorized and directed, subject to the satisfaction of the Stalking Horse Protections' Conditions (as defined herein), to pay the Expense Reimbursement (as defined in the Motion) to the Stalking Horse Purchaser in accordance with the terms of the Stalking Horse APA without further order of this Court. The Expense Reimbursement shall only be payable if the conditions to payment of such amounts set forth in the Stalking Horse APA have been satisfied (collectively, the "Stalking Horse Protections' Conditions"). In the event that the Expense Reimbursement is payable to the Stalking Horse Purchaser, the Stalking Horse Purchaser shall provide documentation of the expenses for which it seeks reimbursement to (a) counsel for the Debtors, (b) counsel to the Consultation Parties, and (c) the United States Trustee; *provided* that such documentation shall not be required to contain time entries, but shall include a general, brief description of the nature of the matters for which services were performed (which shall provide sufficient information to determine if such fees and expenses are reasonable), and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any work product doctrine, privilege, or protection, common interest doctrine privilege or protection, any other evidentiary privilege or protection recognized under applicable law, or any other confidential information, and the provision of such invoices shall not constitute any waiver

of the attorney-client privilege, work product doctrine, privilege, or protection, common interest doctrine privilege or protection, or any other evidentiary privilege or protection recognized under applicable law.  The obligations of Debtors to pay the Expense Reimbursement shall be entitled to superpriority administrative expense claim status, with priority over all other administrative expenses but are and will be junior and subordinate in all respects to (x) the Carve-Out (as defined in the DIP Order) and (y) the DIP Superpriority Claims (as defined in the DIP Order).  In the event the Debtors consummate an Alternate Transaction (as defined in the Stalking Horse APA), the Expense Reimbursement shall be paid to the Stalking Horse Purchaser from the sale proceeds, in cash, at the closing of such Alternate Transaction as a condition to the occurrence of such closing, and shall be payable by the Debtors without further action or order by the Court.

26.     The Debtors are authorized to conduct the Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

27.     In the event that there is a conflict between this Order or the Bidding Procedures, on the one hand, and the Motion, the Stalking Horse APA, or an alternative asset purchase agreement with the Winning Bidder (an "Alternative APA"), on the other hand, this Order and the Bidding Procedures shall control and govern.  If there is a conflict between this Order and the Bidding Procedures, this Order shall control and govern.  If there is a conflict between this Order or the Bidding Procedures, on the one hand, and any notice served in connection with the Motion or this Order, on the other hand, this Order and the Bidding Procedures shall control and govern.

28.     Prior to mailing the Assumption Notice and the Sale Notice, as applicable, the Debtors may fill in, or cause to be filled in, any missing dates and other information, correct any typographical errors, conform the provisions thereof to the provisions of this Order, and make such other, non-material changes as the Debtors deem necessary or appropriate.

29.     This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004(h) or 6006(d) or any other provision of the Bankruptcy Code, the Bankruptcy Rules or the Local Rules is expressly waived. The Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and may, in its sole discretion and without further delay, take any action and perform any act authorized or approved under this Order.

30.     The requirements set forth in Local Rules 6004-1, 9006-1, and 9013-1 are hereby satisfied or waived.

31.     This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

**<u>Exhibit 1</u>**

**Bidding Procedures**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| INDEPENDENT PET PARTNERS | ) |
| HOLDINGS, LLC, *et al.*,[1] | ) Case No. 23-10153 (LSS) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

## BIDDING PROCEDURES

On February 5, 2023, the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). The Debtors are maintaining their business and managing their property as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

On [February] [●], 2023, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order [Docket No. ●] (the "Bidding Procedures Order"), granting certain relief requested in the related motion [Docket No. ●] (the "Bidding Procedures Motion"), including authorizing the Debtors to solicit bids and approving the procedures set forth herein (collectively, the "Bidding Procedures") to be employed by the Debtors in connection with the proposed sale (the "Sale") of all or substantially all of the Debtors' assets, free and clear of all liens (as defined in section 101(37) of the Bankruptcy Code), encumbrances, claims (as defined in section 101(5) of the Bankruptcy Code), charges, mortgages, deeds of trust, options, pledges, security interests or similar interests, title defects, hypothecations, easements, rights of way, rights of use, encroachments, judgments, rights of setoff, conditional sale or other title retention agreements and other similar impositions, imperfections or defects of title or restrictions on transfer or use ("Encumbrances") other than Assumed Liabilities[2] and Permitted Liens to IPP Buyer Acquisition, LLC (the "Stalking Horse Purchaser"), pursuant to an Asset Purchase Agreement dated as of February 5, 2023 (the "Stalking Horse APA") with the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Winning Bidder, then an Alternative APA with the Winning Bidder. The Stalking Horse APA is attached to the Bidding Procedures Motion as Exhibit B.

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Independent Pet Partners Holdings, LLC (5913), Independent Pet Partners Intermediate Holdings I, LLC (4827), Independent Pet Partners Intermediate Holdings II, LLC (7550), Independent Pet Partners Employer Holdings, LLC (6785), Independent Pet Partners Employer, LLC (7531), Independent Pet Partners Intermediate Holdings, LLC (8793), IPP - Stores, LLC (6147), IPP Stores Employer, LLC (0847), Especially For Pets, LLC (6801), Pet Life, LLC (3420), Whole Pet Central, LLC (7833), Natural Pawz, LLC (5615), and Pet Source, LLC (1905). The corporate headquarters and the mailing address for the Debtors is 8450 City Centre Dr., Woodbury, MN 55125.

[2]   Capitalized terms used but not yet defined herein shall have the meaning ascribed to such terms below. Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Stalking Horse APA.

**ANY PARTY INTERESTED IN BIDDING ON THE PURCHASED ASSETS SHOULD CONTACT:**

(A)     **ADAM DUNAYER (214-220-8483; ADUNAYER@HL.COM), RUSSELL MASON (214-665-8622; RMASON@HL.COM), AND BLAKE DONOVAN (214-665-8612; BDONOVAN@HL.COM) OF HOULIHAN LOKEY CAPITAL, INC., INVESTMENT BANKER FOR THE DEBTORS; OR**

(B)     **DAVID AGAY, ESQ. (312-642-2217; DAGAY@MCDONALDHOPKINS.COM), MARC CARMEL, ESQ. (312-642-1484; MCARMEL@MCDONALDHOPKINS.COM), AND JOSHUA GADHARF, ESQ. (248-593-2942; JGADHARF@MCDONALDHOPKINS.COM), OF MCDONALD HOPKINS LLC, COUNSEL FOR THE DEBTORS.**

### _Summary of Key Dates Established by Bidding Procedures_

| DATE | DEADLINE/EVENT |
|---|---|
| February 17, 2023 | Deadline for Debtors to file proposed Sale Order |
| One (1) business day after entry of the Bidding Procedures Order | Deadline for Debtors to serve Assumption Notices on each Counterparty to a Potential Purchased Contract |
| March 7, 2023 | Deadline for Stalking Horse Purchaser to provide Adequate Assurance Information to the Debtors |
| One (1) business day after receiving such information | Deadline for Debtors to provide Adequate Assurance Information of Stalking Horse Purchaser to requesting Counterparties (as defined in the Bidding Procedures Order) |
| March 15, 2023 at 5:00 p.m. (ET) | Bid Deadline (1) for the submission of Qualifying Bids, (2) for the Stalking Horse Purchaser (subject to the provisions of the Stalking Horse APA allowing the Stalking Horse Purchaser to (a) amend the list of Potential Purchased Contracts and (b) designate Specified Commercial Contracts as Designated Contracts) and any Qualifying Bidder to designate Potential Purchased Contracts as Purchased Contracts, and (3) for any Qualifying Bidder (other than the Stalking Horse Purchaser) to provide Adequate Assurance Information to the Debtors |

| | Deadline to file Sale Objections and Contract Objections (other than to Adequate Assurance Objections to Winning Bidder or Back-Up Bidder that is not the Stalking Horse Bidder) |
|---|---|
| March 17, 2023 | Deadline for Debtors to designate Qualifying Bids and Baseline Bid |
| March 20, 2023 at 10:00 a.m. (ET) | Auction |
| One (1) day after cancellation or completion of the Auction | Deadline to file and serve Notice of Winning Bidder<br><br>Deadline for Debtors to provide Adequate Assurance Information of Winning Bidder and Back-Up Bidder (other than the Stalking Horse Purchaser) to requesting Counterparties |
| March 22, 2023 at 12:00 p.m. (ET) | Deadline to file Winning Bidder Adequate Assurance Objection (as defined in the Bidding Procedures Order) |
| One (1) day before Sale Hearing at 12:00 p.m. (ET) | Deadline to file and serve a reply to any Sale Objection or Contract Objection |
| March [24], 2023 at __:__ a.m. (ET) | Sale Hearing |
| April 14, 2023 | Deadline for Winning Bidder to close the transaction contemplated by its Winning Bid |

1.    **Stalking Horse Purchaser**

On February 5, 2023, the Debtors entered into the Stalking Horse APA with the Stalking Horse Purchaser. As set forth more fully in the Stalking Horse APA, the consideration to be provided by the Stalking Horse Purchaser under the Stalking Horse APA is (i) a credit bid under section 363(k) of the Bankruptcy Code in the amount of $60,000,000.00 consisting of $27,258,311.48 in DIP Obligations,[3] $9,195,481.69 in Prepetition Priming Secured Obligations,

---

[3] For the avoidance of doubt, the DIP Obligations include all obligations under that certain Credit Agreement, dated as of December 22, 2017, by and among the IPP Intermediate and certain Subsidiaries of IPP Intermediate as Borrowers, the Guarantors (as defined therein) party thereto from time to time, the Lenders (as defined therein) party thereto from time to time, and Acquiom Agency Services, LLC as administrative and collateral agent that are rolled up into the DIP Facility pursuant to the final order approving debtor in possession financing for the Debtors (the "DIP Order").

and $23,546,206.83 in Prepetition DDTL Secured Obligations and (ii) the amount of the assumption of the Assumed Liabilities and (ii) the amount of the assumption of the Assumed Liabilities (collectively, the "Purchase Price"). The Stalking Horse APA also includes various customary representations, warranties, and covenants by and from the Debtors and the Stalking Horse Purchaser, and certain conditions to closing and rights of termination related to the Sale and the Chapter 11 Cases generally.

The Stalking Horse Purchaser is deemed to be a Qualifying Bidder (as defined herein) and the Stalking Horse APA is deemed to be a Qualifying Bid (as defined herein). The Stalking Horse Purchaser is credit bidding pursuant to 11 U.S.C. § 363(k), and is not required to make a Deposit (as defined below) with the Debtors. The Stalking Horse Purchaser shall have the unqualified right at any time to credit bid on a dollar-for-dollar basis up to the full amount of the DIP Obligations (including the Rolled Up Prepetition Obligations) and the obligations (the "Prepetition Secured Obligations") under that certain Credit Agreement dated as of November 20, 2018, by and among IPP Intermediate, as Borrower, IPP Parent, as Parent and certain subsidiaries of the Parent, as guarantors, the Lenders (as defined therein) party thereto from time to time, and Wilmington Trust, National Association, as administrative and collateral agent (as supplemented and amended from time to time, the "Prepetition DDTL Credit Agreement") .

2.    **Assets to Be Sold**

The Debtors shall offer the Purchased Assets for sale.

3.    **Participation Requirements**

Any person or entity that wishes to conduct diligence about the Debtors (an "Interested Party") may request access to the Debtors' confidential electronic data room concerning the Purchased Assets (the "Data Room"). To become an Interested Party, and thus be able to conduct due diligence, an Interested Party must execute a confidentiality agreement with the Debtors.

Any Interested Party (other than the Stalking Horse Purchaser) that wishes to participate in the bidding process for the Purchased Assets (each, a "Potential Bidder") must first become a "Qualifying Bidder." To become a Qualifying Bidder, a Potential Bidder must submit to the Debtors and their advisors:

(a)    documentation identifying the interested party, its principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction;

(b)    an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors;

(c)    a statement and other factual support demonstrating to the Debtors' reasonable satisfaction, after consultation with the Consultation Parties (as defined herein), that the interested party has a *bona fide* interest in consummating a sale transaction; and

(d)    sufficient information, as determined by the Debtors, after consultation with the Consultation Parties, to allow the Debtors to determine that the interested party (x)

has, or can obtain, the financial wherewithal and any required internal corporate, legal, or other authorizations to close a sale transaction, including, without limitation, current audited financial statements of the interested party (or such other form of financial disclosure acceptable to the Debtors in their discretion), and (y) can provide adequate assurance of future performance under any executory contracts and unexpired leases to be assumed by the Debtors and assigned to such bidder, pursuant to section 365 of the Bankruptcy Code, in connection with the Sale.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate its contemplated transaction.

Notwithstanding anything to the contrary herein, and for the avoidance of doubt, for all purposes under the Bidding Procedures: (i) the Stalking Horse Purchaser shall be considered a Qualifying Bidder, and the Stalking Horse APA shall be considered a Qualifying Bid, without regard to any of the requirements or conditions set forth herein and without any other or further action by the Stalking Horse Purchaser; and (ii) in determining whether the Potential Bidders constitute Qualifying Bidders, the Debtors may consider a combination of bids for the Purchased Assets.

## 4.    **Bankruptcy Court Jurisdiction**

Any Potential Bidders and Qualifying Bidders shall: (a) be deemed to have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Court over, any actions or proceedings arising from or relating the Bidding Procedures, the Sale, the Auction, and the construction and enforcement of the contemplated transaction documents of such parties; (b) bring any such action or proceeding in the Court; and (c) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including, without limitation, all appeals, shall be conclusive and may be enforced in other jurisdictions (including, without limitation, any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law.

## 5.    **Form of Agreement**

Potential Bidders should reference the Stalking Horse APA in connection with their bids. As set forth below, Potential Bidders intending to submit bids must include with their bids:

(a)     a statement that such Potential Bidder offers to (i) purchase some or all of the Purchased Assets and (ii) assume liabilities upon substantially the same terms as or terms more favorable to the Debtors and their estates than the terms set forth in the Stalking Horse APA, if applicable; and

(b)     a clean and duly executed asset purchase agreement (an "Alternative APA") and a marked copy of the Alternative APA that reflects any variations from the Stalking Horse APA.

6. **Due Diligence**

The Debtors will provide any Qualifying Bidder with reasonable access to the Data Room and any other additional information that the Debtors believe to be reasonable and appropriate under the circumstances. All additional due diligence requests shall be directed to: (a) investment banker for the Debtors, Houlihan Lokey Capital, Inc., Adam Dunayer (214-220-8483; adunayer@hl.com), Russell Mason (214-665-8622; rmason@hl.com), and Blake Donovan (214-665-8612; bdonovan@hl.com); and (b) counsel for the Debtors, McDonald Hopkins, David Agay, Esq. (312-642-2217; dagay@mcdonaldhopkins.com), Marc Carmel, Esq. (312-642-1484; mcarmel@mcdonaldhopkins.com), and Joshua Gadharf, Esq. (248-593-2942; jgadharf@mcdonaldhopkins.com).

The due diligence period shall extend through and including the Bid Deadline. The Debtors, in their business judgment, may, but shall not be obligated to, furnish any due diligence information after the Bid Deadline.

The Debtors reserve the right, in their reasonable discretion, to withhold or limit access to any due diligence information that the Debtors determine is business-sensitive or otherwise not appropriate for disclosure to a Qualifying Bidder. Notwithstanding any prepetition limitations, including, without limitation, any non-disclosure, confidentiality, or similar provisions relating to any due diligence information, the Debtors and their estates shall be authorized to provide due diligence information to Qualifying Bidders, *provided* that such Qualifying Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtors. The Debtors and their estates are not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any Qualifying Bidders in connection with the Bidding Procedures and the Sale.

7. **Bid Requirements**

Other than in the case of the Stalking Horse Purchaser and the Stalking Horse APA, which shall be considered a Qualifying Bidder and a Qualifying Bid, respectively, for all purposes under the Bidding Procedures, without regard to any of the requirements or conditions set forth therein and without any other or further action by the Stalking Horse Purchaser, to be deemed a "Qualifying Bid," a bid must be received from a Qualifying Bidder on or before the Bid Deadline and satisfy each of the following requirements (each, a "Bid Requirement"):

(a)     be in writing;

(b)     fully disclose the identity of the Qualifying Bidder (and to the extent that the Qualifying Bidder is a newly formed acquisition entity or the like, the identity of the Qualifying Bidder's parent company or sponsor), and provide the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the bid submitted by the Qualifying Bidder;

(c)     set forth the purchase price to be paid by such Qualifying Bidder;

(d)     state the liabilities proposed to be paid or assumed by such Qualifying Bidder;

(e)     specify the Purchased Assets that are included in the bid and state that such Qualifying Bidder offers to (i) purchase some or all of the Purchased Assets, and (ii) assume liabilities upon substantially the same terms as, or terms more favorable to the Debtors and their estates than, the terms set forth in the Stalking Horse APA;

(f)     be accompanied by an Alternative APA and a marked copy of the Alternative APA that reflects any variations from the Stalking Horse APA;

(g)     state that such Qualifying Bidder's offer is formal, binding, and unconditional, and is irrevocable until two (2) business days after the closing of the Sale;

(h)     state that such Qualifying Bidder is financially capable of consummating the transactions contemplated by the Alternative APA and provide written evidence in support thereof;

(i)     contain such financial and other information to allow the Debtors to make a reasonable determination, after consultation with the Consultation Parties, as to the Qualifying Bidder's financial and other capabilities to close the transactions contemplated by the Alternative APA, including, without limitation, such financial and other information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code, including the Qualifying Bidder's financial wherewithal and willingness to perform under any Purchased Contracts ("Adequate Assurance Information").  By submitting a Bid, the Qualified Bidders agree that the Debtors may disseminate their Adequate Assurance Information to the official committee of unsecured creditors appointed in the Chapter 11 Cases (the "Creditors' Committee") and, upon request, to Counterparties;

(j)     identify with particularity each and every executory contract and unexpired lease the assumption and assignment of which is a condition to close the transactions contemplated by the Alternative APA;

(k)     include a commitment to close the transactions contemplated by the Alternative APA by no later than April 14, 2023;

(l)     not request or entitle such Qualifying Bidder to any break-up fee, termination fee, expense reimbursement, substantial contribution claim, or similar type of fee or payment;

(m)    propose cash consideration equal to or exceeding the sum of (i) the aggregate dollar amount of the Credit Bid, (ii) the dollar amount equal to the Excluded Cash under the Stalking Horse APA, (iv) $750,000 for the Expense Reimbursement, and (v) $250,000 (the "Minimum Bid Amount");

(n)     not contain any contingencies of any kind (other than closing conditions consistent with, and no less favorable to the Debtors than, the closing conditions set forth in

the Stalking Horse APA, to the extent applicable), including, without limitation, contingencies related to financing, internal approval, or due diligence;

(o)     contain a written acknowledgement and representation that the Qualifying Bidder (i) has had an opportunity to conduct any and all due diligence regarding the Purchased Assets, (ii) has relied solely upon its own independent review, investigation, or inspection of any documents and other information in making its Qualifying Bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets, or the completeness of any documents or other information provided in connection with the Bidding Procedures and the Sale;

(p)     set forth (i) a statement or evidence that the Qualifying Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, if applicable, and pay the fees associated with such filings, and (ii) any regulatory and third-party approvals required for the Qualifying Bidder to close the transactions contemplated by the Alternative APA, and the time period within which the Qualifying Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than five (5) days following execution and delivery of such Qualifying Bidder's Alternative APA, those actions the bidder will take to ensure receipt of such approval(s) as promptly as possible); *provided* that a Qualifying Bidder agrees that its legal counsel will coordinate in good faith with the Debtors' legal counsel to discuss and explain Qualifying Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable, and in no event later than the time period contemplated in the Alternative APA; *provided, further* that the offer contains a covenant to cooperate with the Debtors to provide pertinent factual information regarding the bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements;

(q)     provide for the Qualifying Bidder to serve as a back-up bidder (the "Back-Up Bidder") if the Qualifying Bidder's bid is the next highest or otherwise best bid (the "Back-Up Bid") after the Winning Bid, in accordance with the terms of the Alternative APA as submitted or modified at the Auction;

(r)     include written evidence of authorization and approval from the Qualifying Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of the Alternative APA;

(s)     provide a good faith cash deposit (the "Deposit") in an amount equal to ten percent (10%) of the purchase price provided for in the Alternative APA (or such additional amount as may be determined by the Debtors in their reasonable discretion); and

(t)     provide that in the event of the Qualifying Bidder's breach of, or failure to perform under, the Alternative APA, the Qualifying Bidder shall forfeit its Deposit to the Debtors, and the Debtors shall be entitled to pursue all available legal and equitable remedies, including, without limitation, additional damages and/or specific performance.

A bid from a Qualifying Bidder satisfying all of the above requirements, as determined by the Debtors, in consultation with the Consultation Parties, shall constitute a Qualifying Bid. The Debtors reserve the right to work with any Qualifying Bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed a Qualifying Bid.

The Debtors, in consultation with the Consultation Parties, may determine that separate bids for less than all of the Purchased Assets constitute a single Qualifying Bid *provided* that the aggregate cash components and aggregate value proposed by such bids must satisfy the Bid Requirements.

Each Qualifying Bidder submitting a bid shall be deemed to: (a) acknowledge and represent that it is bound by all of the terms and conditions of the Bidding Procedures; and (b) have waived the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its bid, the Bidding Procedures, and the Sale.

### 8.    <u>Bid Deadline</u>

A Qualifying Bidder, other than the Stalking Horse Purchaser, that desires to make a bid shall deliver a written and electronic copy of its bid in both PDF and MS-WORD format to the Bidding Procedures Notice Parties and the Consultation Parties so as to be received on or before **March 15, 2023 at 5:00 p.m. (ET)** (the "<u>Bid Deadline</u>"); *provided* that the Debtors may extend the Bid Deadline without further order of the Court, after consultation with the Postpetition Lenders and the Consultation Parties. As part of their bid, by the Bid Deadline, the Stalking Horse Purchaser and each Qualifying Bidder must provide the Debtors and the other Bidding Procedures Notice Parties (a) a list of the Potential Purchased Contracts to be Purchased Contracts and (b) Adequate Assurance Information. **Any party that does not submit a bid by the Bid Deadline will not be allowed to (a) submit any offer after the Bid Deadline or (b) participate in the Auction.**

### 9.    <u>Evaluation of Qualifying Bids</u>

The Debtors will deliver, within one (1) business day after receipt thereof, copies of all bids from Qualifying Bidders to the Consultation Parties.

The Debtors, in consultation with the Consultation Parties, shall make a determination regarding whether a timely submitted bid from a Qualifying Bidder is a Qualifying Bid.

No later than March 17, 2023, the Debtors shall: (i) notify all Qualifying Bidders whether their bids have been determined to be a Qualifying Bid; and (ii) determine, in consultation with the Consultation Parties, which of the Qualifying Bids, at such time, is the highest or otherwise best bid for purposes of constituting the opening bid of the Auction (which, other than the bid under the Stalking Horse APA, must be at least equal to the Minimum Bid Amount (individually

or collectively), the "<u>Baseline Bid</u>" and the Qualifying Bidder submitting the Baseline Bid, the "<u>Baseline Bidder</u>"), and shall promptly notify the Stalking Horse Purchaser and all Qualifying Bidders with Qualifying Bids of the Baseline Bid.

10.    **<u>No Qualifying Bids</u>**

If no timely Qualifying Bids other than the Stalking Horse Purchaser's Qualifying Bid are submitted on or before the Bid Deadline, the Debtors shall not hold an Auction and shall request at the Sale Hearing that the Court approve the Stalking Horse APA and the transactions contemplated thereunder.

11.    **<u>Auction</u>**

If the Debtors timely receive one or more Qualifying Bids other than the Stalking Horse APA, then the Debtors shall conduct an auction (the "<u>Auction</u>"). Following the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualifying Bid is the highest or otherwise best bid for the Purchased Assets, which will be determined by considering, among other things, the following non-binding factors: (a) the number, type, and nature of any changes to the Stalking Horse APA requested by each bidder; (b) the extent to which such modifications are likely to delay closing of the Sale and the cost to the Debtors and their estates of such modifications or delay; (c) the total consideration to be received by the Debtors and their estates; (d) the transaction structure and execution risk, including, without limitation, conditions to, timing of and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approval; (e) the net benefit to the Debtors' estates; and (f) any other factors the Debtors may reasonably deem relevant.

The Auction shall be governed by the following procedures:

(a)    the Auction shall be held on **<u>March 20, 2023 at 10:00 a.m. (ET)</u>** at the offices of Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 or virtually via telephone or video conference pursuant to information to be timely provided by the Debtors to the Auction Participants (as defined herein);

(b)    only the Stalking Horse Purchaser and the other Qualifying Bidders with Qualifying Bids (together, the "<u>Auction Bidders</u>") shall be entitled to make any subsequent bids at the Auction;

(c)    the Auction Bidders shall appear at the Auction, or through a duly authorized representative;

(d)    only (i) the Debtors, (ii) the Auction Bidders, (iii) the Consultation Parties, (iii) and any other creditors of the Debtors who desire to attend the Auction and provide no less than five (5) days advance written notice, together with the advisors to each of the foregoing parties, may attend the Auction (collectively, the "<u>Auction Participants</u>"). Each Auction Participant shall provide counsel for the Debtors written notice of their intent to attend the Auction no later than 5:00 p.m. (ET) five

(5) days prior to the Auction to Brenda Walters at Young Conaway Stargatt & Taylor, LLP at bwalters@ycst.com.

(e)    the Debtors and their advisors shall direct and preside over the Auction, which shall be transcribed;

(f)    prior to start of the Auction, each of the Auction Bidders shall confirm that they have not engaged in any collusion with respect to the Bidding Procedures, the Auction, or the Sale;

(g)    bidding shall commence at the amount of the Baseline Bid, and the Auction Bidders may submit successive bids in increments of at least $250,000, *provided* that: (i) each such successive bid must be a Qualifying Bid; and (ii) the Debtors shall retain the right to modify the bid increment requirements at the Auction;

(h)    the Auction may include individual negotiations with any of the Auction Bidders, but all bids shall be made on the record and in the presence of all of the Auction Bidders;

(i)    all material terms of the bid that is deemed to be the highest or otherwise best bid for each round of bidding shall be fully disclosed to the Auction Bidders, and the Debtors shall use reasonable efforts to clarify any and all questions that the Auction Bidders may have regarding the Debtors' announcement of the then-current highest or otherwise best bid;

(j)    except as specifically set forth herein, for the purpose of evaluating the value of the Purchase Price provided by each successive bid (including any successive bid by the Stalking Horse Purchaser), the Debtors, in consultation with the Consultation Parties, may give effect to the Expense Reimbursement as well as any additional liabilities to be assumed by a Qualifying Bidder, and any additional costs which may be imposed on the Debtors;

(k)    the Debtors and their advisors, in consultation with the Consultation Parties, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction, *provided* that such rules (i) are not inconsistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, or any applicable order of the Court entered in connection with the Chapter 11 Cases, including, without limitation, the Bidding Procedures Order and the DIP Order, (ii) do not purport to abrogate or modify the Expense Reimbursement, and (iii) are disclosed to the Auction Bidders;

(l)    each Auction Bidder shall (i) be deemed to have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Court over, any actions or proceedings arising from or relating the Bidding Procedures, the Sale, the Auction and the construction and enforcement of the contemplated transaction documents of the Auction Bidders, (ii) bring any such

action or proceeding in the Court, and (iii) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including, without limitation, all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law;

(m)     throughout the Auction, the Stalking Horse Purchaser (i) shall have the continuing right to credit bid DIP Obligations then outstanding, or any part thereof, to purchase the Purchased Assets, and (ii) shall have the continuing right to credit bid the Prepetition Secured Obligations then outstanding, or any part thereof, to purchase the Purchased Assets;

(n)     the Auction Bidders shall have the right to make additional modifications to the Stalking Horse APA or any Alternative APA, as applicable, in conjunction with each Qualifying Bid submitted in each round of bidding during the Auction, *provided* that (i) any such modifications on an aggregate basis and viewed in whole, shall not, in the Debtors' discretion, in consultation with the Consultation Parties, be less favorable to the Debtors and their estates than the terms of the Stalking Horse APA, and (ii) each Qualifying Bid shall constitute an irrevocable offer and shall be binding on the Auction Bidder submitting such bid until the earliest to occur of: (i) such Auction Bidder submits a subsequent Qualifying Bid that is accepted by the Debtors as a bid that replaces such Auction Bidder's prior bid; (ii) the Auction ends and such Qualifying Bid is not chosen by the Debtors as the Winning Bid or the Back-Up Bid; and (iii) such Qualifying Bid is chosen as the Winning Bid or the Back-Up Bid, in which case such bid shall be binding as set forth in section 11 of these Bidding Procedures;

(o)     the Debtors and the Consultation Parties shall have the right to request any additional financial information that will allow the Debtors and the Consultation Parties to make a reasonable determination as to an Auction Bidder's financial and other capabilities to consummate the transactions contemplated by the Stalking Horse APA or any Alternative APA, as applicable, as may be amended during the Auction, and any further information that the Debtors may believe is reasonably necessary to clarify and evaluate any bid made by an Auction Bidder during the Auction;

(p)     The "Winning Bid" shall (i) if the Auction is cancelled because no Qualifying Bids other than the Stalking Horse Purchaser's Qualifying Bid are submitted on or before the Bid Deadline, be the Stalking Horse Purchaser's Qualifying Bid under the Staking Horse APA or (ii) if the Auction is conducted, be the Qualifying Bid(s) that the Debtors determine at the conclusion of the Auction, in consultation with the Consultation Parties, and subject to Court approval, is or are the offer or offers for the Purchased Assets that is or are the highest or otherwise best from among the Qualifying Bids submitted at the Auction. In the case of (ii), in making this decision, the Debtors shall consider, in consultation with the Consultation Parties, the amount of the purchase price, the assumption of liabilities, the transaction

structure and execution risk, including, without limitation, the likelihood of the bidder's ability to close a transaction and the timing thereof, the number, type, and nature of any changes to the Stalking Horse APA or any Alternative APA submitted with the Winning Bid, as applicable, requested by each bidder, the total consideration to the Debtors' estates, and any other factors the Debtors may deem relevant. The bidder submitting the Winning Bid shall become the "Winning Bidder," and shall have such rights and responsibilities of the purchaser as set forth in such Winning Bidder's Stalking Horse APA or any Alternative APA, as applicable, with all modifications made at the Auction. The Debtors may, in their business judgment, designate the Back-Up Bid (and the corresponding Back-Up Bidder) to purchase the Purchased Assets in the event that the Winning Bidder does not close the Sale;

(q)    any contrary provision hereof notwithstanding, without the written consent of the DIP Agent and Prepetition Agent, no bid or Qualifying Bid may qualify as the Winning Bid unless such bid or Qualifying Bid provides for payment of cash consideration at closing in an amount equal to or exceeding the sum of (i) the dollar amount of the Credit Bid, (ii) the dollar amount of any additional Prepetition Secured Obligations credit bid at the Auction, and (iii) the dollar amount equal to the Excluded Cash under the Stalking Horse APA;

(r)    within one (1) business day of the close of the Auction, the Winning Bidder and the Back-Up Bidder shall supplement the Winning Bidder's Deposit, and the Back-Up Bidder's deposit, respectively, such that the Deposit shall be equal to an amount that is ten (10%) percent of the purchase price set forth in the Winning Bid and the Back-Up Bid, respectively; provided such obligation does not apply to the Stalking Horse Purchaser; and

(s)    prior to the Sale Hearing, the Winning Bidder shall complete and execute all agreements, Contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Winning Bid was made.

**THE WINNING BID AND ANY BACK-UP BID AND THEIR RELATED PURCHASE AGREEMENTS SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE WINNING BIDDER AND THE BACK-UP BIDDER, RESPECTIVELY, FROM THE TIME THE BID IS SUBMITTED UNTIL TWO (2) BUSINESS DAYS AFTER THE SALE HAS CLOSED. EACH QUALIFYING BID THAT IS NOT THE WINNING BID OR THE BACK-UP BID SHALL BE DEEMED WITHDRAWN AND TERMINATED AT THE CONCLUSION OF THE SALE HEARING.**

## 12.    Sale Hearing

The Winning Bid and any Back-Up Bid (or if no Qualifying Bid other than that of the Stalking Horse Purchaser is received, then the Stalking Horse APA) will be subject to approval by the Court. The Sale Hearing to approve the Winning Bid and any Back-Up Bid (or if no Qualifying

Bid other than that of the Stalking Horse Purchaser is received, then the Stalking Horse APA) shall take place on **March [24], 2023 at [●] (ET)**.

At the Sale Hearing, the Debtors will seek entry of a Sale Order that contains, among other things, the provisions set forth in Paragraph 59 of the Bidding Procedures Motion.

### 13.    Back-Up Bidder

Notwithstanding any of the foregoing, in the event that the Winning Bidder fails to close the Sale on or before April 14, 2023 (or such date as may be extended by the Debtors with the consent of the DIP Lenders and in consultation with the Consultation Parties) and a Back-Up Bidder(s) has been previously identified, the Debtors shall (1) file and serve a notice of intent to proceed with a Back-Up Bid (a "Notice of Intent to Proceed with Back-Up Bid"), and (2) schedule a telephonic status conference, which may be expedited, upon reasonable notice under the circumstances, at which time a briefing and hearing schedule will be established for those Counterparties that do not consent to a proposed assumption and assignment to the Back-Up Bidder. The Back-Up Bidder, as identified in the Notice of Successful Bidder, shall not be considered or approved at the Sale Hearing, nor shall affected landlords or counterparties be required to object to Back-Up Bidder prior to the filing and service of the Notice of Intent to Proceed with the Back-Up Bid. The Back-Up Bid will then be deemed to be the Winning Bid, the Back-Up Bidder will be deemed to be the Winning Bidder, and the Debtors shall be authorized, but not directed, to close the Sale to the Back-Up Bidder subject to the terms of the Back-Up Bid without the need for further order of the Court and without the need for further notice to any interested parties.

### 14.    Return of Deposits

All Deposits not used as part of the consummation of the Sale or not retained by the Debtors as part of damages shall be returned to each bidder not selected by the Debtors as the Winning Bidder no later than five (5) business days following the closing of the Sale. The Deposit of the Winning Bidder or, if the Sale is closed with the Back-Up Bidder, the Deposit of the Back-Up Bidder, shall be applied to the purchase price for the Sale. If the Winning Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) fails to consummate the Sale because of a breach or failure to perform on the part of such bidder, then, subject to the terms of the Alternative APA, the Debtors and their estates shall be entitled to retain the Deposit of the Winning Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) as part of the damages resulting to the Debtors and their estates for such breach or failure to perform. For the avoidance of doubt, the Debtors' retention of a Deposit shall not constitute a waiver of any of the Debtors' legal or equitable rights relating to a Winning Bidder's or Back-Up Bidder's breach or failure to perform, and all such rights and remedies are preserved.

### 15.    Expense Reimbursement

The Bidding Procedures Order approves and authorizes the Expense Reimbursement Amount for the Stalking Horse Purchaser pursuant to the amounts and conditions set forth in the Stalking Horse APA and these Bidding Procedures.

16.    **Notice and Consultation Parties**

(a)    The term "<u>Bidding Procedures Notice Parties</u>" as used in these Bidding Procedures shall mean: (i) Independent Pet Partners Holdings, LLC, 8450 City Centr Dr., Woodbury, Minnesota 55125 (Attn: Julie Maday) (ii) counsel to the Debtors, McDonald Hopkins, 300 North LaSalle Street, Suite 1400, Chicago, Illinois 60654 (Attn: David Agay, Esq. (dagay@mcdonaldhopkins.com), Marc Carmel, Esq. (mcarmel@mcdonaldhopkins.com), and Joshua Gadharf, Esq. (jgadharf@mcdonaldhopkins.com)); (ii) counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 1980 (Attn: Andrew Magaziner, Esq. (amagaziner@ycst.com); (iii) counsel to any official committee of unsecured creditors appointed in the Chapter 11 Cases; (iv) counsel to the DIP Lenders, Dechert LLP, 1095 Avenue of the Americas, New York, New York 10036 (Attn: Shmuel Vasser, Esq. (shmuel.vasser@dechert.com) and Stephen Wolpert, Esq. (stephen.wolpert@dechert.com)), and, (vi) local counsel to the DIP Lenders, Richards, Layton & Finger, P.A., P.O. Box 551, Wilmington, Delaware 19899 (Attn: Russell Silberglied, Esq. (silberglied@rlf.com) and Brendan Schlauch, Esq. (schlauch@rlf.com)).

(b)    The term "<u>Consultation Parties</u>" as used in these Bidding Procedures shall mean the Creditors' Committee.

For the avoidance of doubt, any consultation rights provided to the Consultation Parties by these Bidding Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their business judgment.

In the event that any Consultation Party or any member of any Creditors' Committee or an affiliate of any of the foregoing submits a bid that is a Qualifying Bid, any obligation of the Debtors to consult with the bidding party established under these Bidding Procedures will be waived without further action; *provided* that the bidding party will have the same rights as any other Qualifying Bidder set forth above.

17.    **Reservation of Rights**

Notwithstanding any of the foregoing, the Debtors and their estates reserve the right to, after consultation with the Consultation Parties, and with the prior written consent of the DIP Lenders with respect to (a) the date by which the transactions contemplated by an Alternative APA must close and (b) the minimum amount of cash consideration required for an Alternative APA to be a Winning Bid pursuant to Section 11(q), modify the Bidding Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, modify bidding increments, waive terms and conditions set forth herein with respect to any or all Potential Bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all Potential Bidders, adjourn or cancel the Auction at or prior to the Auction, and adjourn the Sale Hearing.

**Exhibit 2**

**Form of Sale Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| INDEPENDENT PET PARTNERS HOLDINGS, LLC, *et al.*, | Case No. 23-10153 (LSS) |
|  | (Jointly Administered) |
| Debtors.[1] | **Ref. Docket No. [●]** |

### NOTICE OF PROPOSED SALE OF ASSETS, STALKING HORSE APA, BIDDING PROCEDURES, AUCTION, AND SALE HEARING

**PLEASE TAKE NOTICE THAT** the above-captioned debtors and debtors-in-possession (the "Debtor") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), on February 5, 2023, in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Debtors are seeking to, among other things, assume and assign certain of their executory contracts and unexpired leases in connection with the sale (the "Sale") of all or substantially all of their assets (the "Assets"), free and clear of all Encumbrances other than Assumed Liabilities and Permitted Liens.[2] In connection with the Sale, the Debtors have entered into an Asset Purchase Agreement dated as of [●], 2023 (the "Stalking Horse APA") with the Stalking Horse Purchaser, and, in the event that the Stalking Horse Purchaser is not the Winning Bidder following an auction process implemented in accordance with the Bidding Procedures, the Debtors anticipate entering into an Alternative APA with the Winning Bidder.

**PLEASE TAKE FURTHER NOTICE** that by order, dated [●], 2023 [Docket No. ●] (the "Bidding Procedures Order"), the Bankruptcy Court approved certain relief requested in the related motion [Docket No. ●] (the "Bidding Procedures Motion") and certain bidding procedures (the "Bidding Procedures") that govern the Sale process. All interested parties should carefully read the Bidding Procedures Order and the Bidding Procedures. Copies of the Bidding Procedures Motion, the Bidding Procedures Order, the Bidding Procedures, and the Stalking Horse APA are available upon request to the Debtors' claims and noticing agent, Omni Agent Solutions, via email

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Independent Pet Partners Holdings, LLC (5913), Independent Pet Partners Intermediate Holdings I, LLC (4827), Independent Pet Partners Intermediate Holdings II, LLC (7550), Independent Pet Partners Employer Holdings, LLC (6785), Independent Pet Partners Employer, LLC (7531), Independent Pet Partners Intermediate Holdings, LLC (8793), IPP - Stores, LLC (6147), IPP Stores Employer, LLC (0847), Especially For Pets, LLC (6801), Pet Life, LLC (3420), Whole Pet Central, LLC (7833), Natural Pawz, LLC (5615), and Pet Source, LLC (1905). The corporate headquarters and the mailing address for the Debtors is 8450 City Centre Dr., Woodbury, MN 55125.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order, or to the extent not defined therein, the Bidding Procedures Motion or the Stalking Horse APA (each as defined herein), as applicable.

at ipp@omniagent.com, and are available for download at https://omniagentsolutions.com/IndependentPetPartners. A separate notice will be provided to counterparties to executory contracts and unexpired leases with the Debtors that may be assumed and assigned in connection with the Sale. Any interested bidder should contact (a) Adam Dunayer (214-220-8483; adunayer@hl.com), Russell Mason (214-665-8622; rmason@hl.com), and Blake Donovan (214-665-8612; bdonovan@hl.com) of Houlihan Lokey Capital, Inc., Investment Banker for the Debtors; or (b) David Agay, Esq. (312-642-2217; dagay@mcdonaldhopkins.com), Marc Carmel, Esq. (312-642-1484; mcarmel@mcdonaldhopkins.com), and Joshua Gadharf, Esq. (248-593-2942; jgadharf@mcdonaldhopkins.com), of McDonald Hopkins LLC, Counsel for The Debtors.

- The deadline to submit a bid for any Assets is **March 15, 2023 at 5:00 p.m. (ET)**.

- Any objections to the Sale or the relief requested in connection with the Sale (a "**Sale Objection**"), other than a Contract Objection, which shall be governed by the Assumption and Assignment Procedures, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of this Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801 **on or before 4:00 p.m. (ET) on March 15, 2023** (the "**Sale Objection Deadline**"), and proof of service of such Sale Objection upon the Objection Notice Parties shall be filed with the Court as and when required by the Local Rules; and (e) be served upon the Objection Notice Parties. If a Sale Objection is not filed and served on or before the Sale Objection Deadline in accordance with the foregoing requirements, the objecting party may be barred from objecting to the Sale and being heard at the Sale Hearing, and the Bankruptcy Court may enter the Sale Order without further notice to such party. The "Objection Notice Parties" are as follows: (i) proposed counsel to the Debtors, McDonald Hopkins LLC, 300 North LaSalle Street, Suite 1400, Chicago, Illinois 60654 (Attn: David Agay, Esq. (dagay@mcdonaldhopkins.com), Marc Carmel, Esq. (mcarmel@mcdonaldhopkins.com), and Joshua Gadharf, Esq. (jgadharf@mcdonaldhopkins.com)); (ii) proposed co-counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 1980 (Attn: Andrew Magaziner, Esq. (amagaziner@ycst.com)); (iii) proposed counsel to any official committee of unsecured creditors appointed in the Chapter 11 Cases; (iv) counsel to the DIP Lenders, Dechert LLP, 1095 Avenue of the Americas, New York, New York 10036 (Attn: Shmuel Vasser, Esq. (shmuel.vasser@dechert.com) and Stephen Wolpert, Esq. (stephen.wolpert@dechert.com)), and co-counsel to the DIP Lenders, Richards, Layton & Finger, P.A., P.O. Box 551, Wilmington, Delaware 19899 (Attn: Russell Silberglied, Esq. (silberglied@rlf.com) and Brendan Schlauch, Esq. (schlauch@rlf.com)); and (v) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), 855 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Rosa Sierra-Fox (rosa.-sierra-fox@usdoj.gov)).

- Subject to the terms of the Bidding Procedures Order, to the extent that the Debtors receive a competing qualified bid for the Assets, an auction (the "Auction") will be conducted on **March 20, 2023 at 10:00 a.m. (ET)**, at the offices of Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, or virtually via telephone and/or video conference pursuant to information to be timely provided by the Debtors to the

Auction Participants (as defined below). Only (i) the Debtors, (ii) the Auction Bidders (including, without limitation, the Stalking Horse Purchaser), (iii) the Consultation Parties, and (iv) any other creditors of the Debtors who desire to attend the auction and provide no less than five (5) days advance written notice to the Debtors' counsel, together with the professional advisors to each of the foregoing parties, may attend the Auction (collectively, the "**Auction Participants**"). Each Auction Participant shall provide prior written notice of their intent to attend the Auction.to Brenda Walters at Young Conaway Stargatt & Taylor, LLP at bwalters@ycst.com.

- Unless adjourned in accordance with the Bidding Procedures Order, the Bankruptcy Court will conduct a hearing to consider the Sale (a "Sale Hearing") on **March [24], 2023 at [  ]:[  ] a.m. (ET)**.

 

      **PLEASE TAKE FURTHER NOTICE THAT IF A SALE OBJECTION IS NOT FILED AND SERVED ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO THE SALE AND BEING HEARD AT THE SALE HEARING, AND THE BANKRUPTCY COURT MAY ENTER THE SALE ORDER WITHOUT FURTHER NOTICE TO SUCH PARTY.**

Dated:  February [ ] , 2023
Wilmington, Delaware

Respectfully submitted,

/s/ *Draft*_____
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Andrew L. Magaziner (No. 5426)
S. Alexander Faris (No. 6278)
Kristin L. McElroy (No. 6871)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile:  (302) 571-1253
Email:  amagaziner@ycst.com
          afaris@ycst.com
          kmcelroy@ycst.com

- and -

**MCDONALD HOPKINS LLC**
David A. Agay
Marc Carmel
Joshua Gadharf
Maria G. Carr
Ashley Jericho
300 North LaSalle Street, Suite 1400
Chicago, Illinois 60654
Telephone: (312) 280-0111
Facsimile:  (312) 280-8232
Email: dagay@mcdonaldhopkins.com
          mcarmel@mcdonaldhopkins.com
          jgadharf@mcdonaldhopkins.com
          mcarr@mcdonaldhopkins.com
          ajericho@mcdonaldhopkins.com

*Proposed Counsel to the Debtors and Debtors in
Possession*

## Exhibit 3

## Form of Assumption Notice

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| INDEPENDENT PET PARTNERS | ) | Case No. 23-10153 (LSS) |
| HOLDINGS, LLC, *et al.*, | ) |  |
|  | ) | (Jointly Administered) |
| Debtors.[1] | ) |  |
|  | ) | **Ref. Docket No. [●]** |

## NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT AND CURE AMOUNTS WITH RESPECT TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF THE DEBTORS

**PLEASE TAKE NOTICE THAT:**

The above-captioned debtors and debtors-in-possession (the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), on February 5, 2023, in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Debtors are seeking to, among other things, assume and assign certain of their executory contracts and unexpired leases in connection with the sale (the "Sale") of all or substantially all of their assets (the "Assets"), free and clear of all Encumbrances other than Assumed Liabilities and Permitted Liens.[2] In connection with the Sale, the Debtors have entered into an Asset Purchase Agreement dated as of [●], 2023 (the "Stalking Horse APA") with the Stalking Horse Purchaser, and, in the event that the Stalking Horse Purchaser is not the Winning Bidder following an auction process implemented in accordance with the Bidding Procedures, the Debtors anticipate entering into an Alternative APA with the Winning Bidder.

By order, dated [●], 2023 [Docket No. ●] (the "Bidding Procedures Order"), the Bankruptcy Court approved certain relief requested in the related motion [Docket No. ●] (the "Bidding Procedures Motion"), certain "Assumption and Assignment Procedures" that govern the Debtors' assumption and assignment of their executory contracts and unexpired leases in connection

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Independent Pet Partners Holdings, LLC (5913), Independent Pet Partners Intermediate Holdings I, LLC (4827), Independent Pet Partners Intermediate Holdings II, LLC (7550), Independent Pet Partners Employer Holdings, LLC (6785), Independent Pet Partners Employer, LLC (7531), Independent Pet Partners Intermediate Holdings, LLC (8793), IPP - Stores, LLC (6147), IPP Stores Employer, LLC (0847), Especially For Pets, LLC (6801), Pet Life, LLC (3420), Whole Pet Central, LLC (7833), Natural Pawz, LLC (5615), and Pet Source, LLC (1905). The corporate headquarters and the mailing address for the Debtors is 8450 City Centre Dr., Woodbury, MN 55125.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order, or, to the extent not defined therein, the Bidding Procedures Motion, or the Stalking Horse APA (as defined herein), as applicable.

with the Sale, and certain bidding procedures (the "Bidding Procedures") that govern the sale of the Assets to the highest or otherwise best bidders. Copies of the Bidding Procedures Motion, the Bidding Procedures Order, the Bidding Procedures and the Stalking Horse APA are available for download at https://omniagentsolutions.com/IndependentPetPartners (the "Case Website") or from the Debtors' claims and noticing agent, Omni Agent Solutions LLC via email at ipp@omniagent.com.

**You are receiving this Notice because you may be a Counterparty to an executory contract (a "Contract") or an unexpired lease (a "Lease") that _may_ be assumed and assigned in connection with such Sale. A list of the Contracts is attached hereto as Exhibit A and a list of Leases is attached hereto as Exhibit B.**

The Debtors have determined the cure amounts owing (the "Cure Amounts") under each Contract and Lease, and have listed the applicable Cure Amounts on Exhibit A and Exhibit B attached hereto. The Cure Amounts are the only amounts proposed to be paid upon any assumption and assignment of the Contracts or Leases, in full satisfaction of all amounts outstanding under the Contracts or Leases.

**To the extent that a Counterparty to a Contract (including, without limitation, a Specified Commercial Contract Counterparty) or Lease objects to (i) the assumption and assignment of the Counterparty's Potential Purchased Contract (including, without limitation, on the basis that the Stalking Horse Purchaser cannot provide adequate assurance of future performance) or (ii) the Cure Amount for any of its Potential Purchased Contracts, the Counterparty must file and serve an objection (a "Contract Objection"). Any Contract Objection shall: (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) be filed with the Clerk of the Court, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801 on or before 4:00 p.m. (ET) on March [15], 2023 (the "Contract Objection Deadline"), and proof of service of such Contract Objection upon the Objection Notice Parties shall be filed with the Court as and when required by the Local Rules; (iv) be served upon the Objection Notice Parties; and (v) state with specificity the grounds for such objection, including, without limitation, the fully liquidated Cure Amount and the legal and factual bases for any unliquidated Cure Amount that the Counterparty believes is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code for the Purchased Contract, along with the specific nature and dates of any alleged defaults, the pecuniary losses, if any, resulting therefrom, and the conditions giving rise thereto and any objection to the provision of adequate assurance of future performance by the Stalking Horse Purchaser.**

**In the event that the Stalking Horse Purchaser is not the Winning Bidder, the deadline to object to the provision of adequate assurance of future performance by a Winning Bidder or Back-Up Bidder that is not the Stalking Horse Purchaser (a "Winning Bidder Adequate Assurance Objection") shall be 12:00 p.m. (ET) on March 22, 2023, and any Winning Bidder Adequate Assurance Objections must be filed and served in the same manner as Contract Objections.**

The "Objection Notice Parties" are as follows: (i) proposed counsel to the Debtors, McDonald Hopkins LLC, 300 North LaSalle Street, Suite 1400, Chicago, Illinois 60654 (Attn:

David Agay, Esq. (dagay@mcdonaldhopkins.com), Marc Carmel, Esq. (mcarmel@mcdonaldhopkins.com), and Joshua Gadharf, Esq. (jgadharf@mcdonaldhopkins.com)); (ii) proposed co-counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 1980 (Attn: Andrew Magaziner, Esq. (amagaziner@ycst.com)); (iii) proposed counsel to any official committee of unsecured creditors appointed in the Chapter 11 Cases; (iv) counsel to the DIP Lenders, Dechert LLP, 1095 Avenue of the Americas, New York, New York 10036 (Attn: Shmuel Vasser, Esq. (shmuel.vasser@dechert.com) and Stephen Wolpert, Esq. (stephen.wolpert@dechert.com)), and co-counsel to the DIP Lenders, Richards, Layton & Finger, P.A., P.O. Box 551, Wilmington, Delaware 19899 (Attn: Russell Silberglied, Esq. (silberglied@rlf.com) and Brendan Schlauch, Esq. (schlauch@rlf.com)); and (v) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), 855 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Rosa Sierra-Fox (rosa.sierra-fox@usdoj.gov)).

**If no Contract Objection is timely received with respect to a Selected Purchased Contract (including, without limitation, Specified Commercial Contracts that are designated as Selected Purchased Contracts in the Notice of Winning Bidder): (i) the Counterparty to such Selected Purchased Contract shall be deemed to have consented to the assumption by the Debtors and assignment to the Winning Bidder of the Selected Purchased Contract, and be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the Winning Bidder); (ii) any and all defaults under the Selected Purchased Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code; and (iii) the Cure Amount for such Selected Purchased Contract shall be controlling, notwithstanding anything to the contrary in such Selected Purchased Contract, or any other related document, and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Selected Purchased Contract against the Debtors and their estates or the Winning Bidder, or the property of any of them, that existed prior to the entry of the Sale Order. If no Contract Objection is timely received with respect to a Specified Commercial Contract that is not designated as a Selected Purchased Contract in the Notice of Winning Bidder, the Specified Commercial Contract Counterparty to such Specified Commercial Contract shall be deemed to have consented to the assumption by the Debtors and assignment to the Winning Bidder of the Specified Commercial Contract in the event such contract is designated a Designated Contract prior to the expiration of the Designation Period under Section 2.6(b) of the Stalking Horse Purchase Agreement (or similar provision in an Alternative APA), and be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the Winning Bidder), subject only to the Specified Commercial Contract Counterparty's right to file a Supplemental Contract Objection to its Updated Proposed Cure Amount under Section 2.6(b) of the Stalking Horse Purchase Agreement (or similar provision in an Alternative APA).**

Subject to the terms of the Bidding Procedures Order, to the extent that the Debtors receive a competing qualified bid for the Assets, an auction (the "Auction") will be conducted on **March**

**20, 2023 at 10:00 a.m. (ET)**, at the offices of Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, or virtually via telephone and/or video conference pursuant to information to be timely provided by the Debtors to the Auction Participants (as defined below). Only (i) the Debtors, (ii) the Auction Bidders (including, without limitation, the Stalking Horse Purchaser), (iii) the Consultation Parties, and (iv) any other creditors of the Debtors who desire to attend the auction and provide no less than five (5) days advance written notice to the Debtors' counsel, together with the professional advisors to each of the foregoing parties, may attend the Auction (collectively, the "Auction Participants"). Each Auction Participant shall provide prior written notice of their intent to attend the Auction.to Brenda Walters at Young Conaway Stargatt & Taylor, LLP at bwalters@ycst.com.

Within one (1) day after the cancellation or completion of the Auction, the Debtors shall file with the Court a notice identifying the Winning Bidder (a "Notice of Winning Bidder"), which shall set forth, among other things, (i) the Winning Bidder and Back-Up Bidder (if any) and the amount of each of the Winning Bid and the Back-Up Bid (if any), (ii) the Selected Purchased Contracts, and (iii) the proposed assignee(s) of such Selected Purchased Contracts, and serve the Notice of Winning Bidder by overnight mail and, if available, electronic mail, upon each affected Counterparty and its counsel (if known).

The Debtors will seek Court approval of the assumption and assignment to the Winning Bidder of only those Potential Purchased Contracts, including, without limitation, Specified Commercial Contracts, that have been selected by the Winning Bidder to be assumed and assigned (each, a "Selected Purchased Contract," and collectively, the "Selected Purchased Contracts") at a hearing before the Honorable Chief Judge Laurie Selber Silverman, in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington, Delaware 19801, 6th Floor, (a "Sale Hearing") on **March [24], 2023 at [__]:[__] a.m. (ET)**. Specified Commercial Contracts that are not designated as Selected Purchased Contracts in the Notice of Winning Bidder shall be subject to the procedures set forth in Section 2.6(b) of the Stalking Horse Purchase Agreement (or similar provision in an Alternative APA).

To the extent that the Debtors and a Counterparty are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be determined by the Debtors, in consultation with the Winning Bidder, or otherwise fixed by the Court. In the case of a Contract Objection filed by a Specified Commercial Contract Counterparty with respect to a Specified Commercial Contract that is not designated as a Selected Purchased Contract in the Notice of Winning Bidder, the issues raised in the Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be determined by the Debtors, subject only to the Specified Commercial Contract Counterparty's right to file a Supplemental Contract Objection to its Updated Proposed Cure Amount under Section 2.6(b) of the Stalking Horse Purchase Agreement (or similar provision in an Alternative APA). To the extent that (i) the Debtors settle a Contract Objection or Supplemental Contract Objection or (ii) the Court enters an order resolving the Contract Objection or Supplemental Contract Objection, and such settlement or order is not acceptable to the Winning Bidder, the Winning Bidder shall have the option to designate the relevant Contract or Lease as no longer a Purchased Contract, in which case such Contract or Lease shall not be assumed by the Debtors or assigned to the Winning Bidder, and neither the Debtors

nor the Winning Bidder shall be responsible for any Cure Amounts related to such Contract or Lease.

Although the Debtors have made a good-faith effort to identify all Potential Purchased Contracts that might be assumed and assigned in connection with a Sale, the Debtors or the Winning Bidder may identify certain other Contracts or Leases that should be assumed and assigned in connection with a Sale. Accordingly, the Debtors have reserved the right to (i) supplement the list of Potential Purchased Contracts annexed to this Notice with previously omitted Potential Purchase Contracts in accordance with the definitive agreement for a Sale, (ii) remove a Potential Purchased Contract from the list of Contracts and Leases ultimately selected as a Purchased Contract that may be assumed and assigned in connection with a Sale, and/or (iii) modify the previously stated Cure Amounts associated with any Potential Purchased Contract.

Notwithstanding anything to the contrary herein, if, after the Sale Hearing or the entry of the Sale Order, additional Contracts or Leases of the Debtors are determined to be Purchased Contracts, as soon as practicable thereafter, the Debtors shall file with the Court and serve, by regular mail, on the Counterparties an Assumption Notice, and such Counterparties shall file any Contract Objections (including, without limitation, with respect to adequate assurance of future performance of the Winning Bidder and the Cure Amount) not later than fourteen (14) days thereafter. If no Contract Objection is timely received, the Debtors shall be authorized to assume and assign such Purchased Contracts to the Winning Bidder, without further notice to creditors or other parties in interest and without the need for further order of the Court, and such assumption and assignment shall be subject to the terms of the Sale Order.

Dated:  February [ ] , 2023
Wilmington, Delaware

Respectfully submitted,

/s/ *Draft*_____
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Andrew L. Magaziner (No. 5426)
S. Alexander Faris (No. 6278)
Kristin L. McElroy (No. 6871)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile:  (302) 571-1253
Email:  amagaziner@ycst.com
         afaris@ycst.com
         kmcelroy@ycst.com

- and -

**MCDONALD HOPKINS LLC**
David A. Agay
Marc Carmel
Joshua Gadharf
Maria G. Carr
Ashley Jericho
300 North LaSalle Street, Suite 1400
Chicago, Illinois 60654
Telephone: (312) 280-0111
Facsimile:  (312) 280-8232
Email: dagay@mcdonaldhopkins.com
         mcarmel@mcdonaldhopkins.com
         jgadharf@mcdonaldhopkins.com
         mcarr@mcdonaldhopkins.com
         ajericho@mcdonaldhopkins.com

*Proposed Counsel to the Debtors and Debtors in
Possession*