IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| INDEPENDENT PET PARTNERS | ) |
| HOLDINGS, LLC, *et al.*,[1] | ) Case No. 23-10153 (LSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |
| | ) <u>Hearing Date</u>: September 12, 2023 at 2:00 p.m. (ET) |
| | ) <u>Obj. Deadline</u>: August 14, 2023 at 4:00 p.m. (ET) |
| | ) |

**APPLICATION OF NP ACQUISITION LLC FOR ALLOWANCE AND
PAYMENT OF A CHAPTER 11 ADMINISTRATIVE EXPENSE**

NP ACQUISITION LLC ("<u>NP Acquisition</u>") files this *Application for Allowance and Payment of a Chapter 11 Administrative Expense* (the "<u>Application</u>") in the above-styled, jointly administered, Chapter 11 cases (the "<u>Bankruptcy Cases</u>") and respectfully states as follows:

**PRELIMINARY STATEMENT**

1. This Application asserts administrative-expense priority under Bankruptcy Code § 503(b)(1) for damages NP Acquisition incurred because of multiple breaches of contract and commercial torts the Debtors committed in connection with a purchase transaction between the Debtors and NP Acquisition approved by this Court. Specifically, on February 24, 2023, this Court entered the Sale Order[2] approving NP Acquisition's purchase of twenty-four (24) Store Leases identified in the Debtors' February 10, 2023 Sale Motion, as well as all the inventory, equipment,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Independent Pet Partners Holdings, LLC (5913), Independent Pet Partners Intermediate Holdings I, LLC (4827), Independent Pet Partners Intermediate Holdings II, LLC (7550), Independent Pet Partners Employer Holdings, LLC (6785), Independent Pet Partners Employer, LLC (7531), Independent Pet Partners Intermediate Holdings, LLC (8793), IPP - Stores, LLC (6147), IPP Stores Employer, LLC (0847), Especially For Pets, LLC (6801), Pet Life, LLC (3420), Whole Pet Central, LLC (7833), Natural Pawz, LLC (5615), and Pet Source, LLC (1905). The corporate headquarters and the mailing address for the Debtors is 8450 City Centre Dr., Woodbury, MN 55125.

[2] All capitalized terms used in this Preliminary Statement are defined below.

1

furniture, intellectual property (such as the "Natural Pawz" brand), customer data, and other related assets associated with these Store Leases (together, the "<u>Transaction</u>"). The Transaction closed on March 1, 2023 (the "<u>Closing Date</u>") when NP Acquisition paid the Debtors the Purchase Price of $2,583,746 for these assets.

2. Unfortunately, the Debtors breached the APA and the other Transaction Documents in numerous respects, interfered with NP Acquisition's business operations and customer relationships, and converted property sold to NP Acquisition as part of the Transaction. Worse yet, NP Acquisition subsequently learned that the Debtors had fraudulently induced NP Acquisition into entering into the Transaction in the first instance and into executing the APA and other Transaction Documents—decisions NP Acquisition would not have made absent the Debtors' misrepresentations. To this end, the Debtors knowingly provided NP Acquisition with materially false and misleading information about the Transaction, and NP Acquisition relied on that information when it closed the Transaction. Because of the Debtors' actions (and inactions), NP Acquisition incurred substantial post-petition damages, costs, and other expenses.

3. NP Acquisition's damages qualify as administrative expenses under Bankruptcy Code § 503(b)(1)(A) because they arise out of the Debtors' post-petition torts and breaches of contract. *See* 11 U.S.C. § 503(b)(1)(A). NP Acquisition therefore intends to file the attached *Complaint of NP Acquisition LLC, Application for Allowance of an Administrative Expense under 11 U.S.C. § 503(b)(1), and Request for an Accounting and Other Relief* (the "<u>Adversary Complaint</u>") in this Court so that NP Acquisition may properly assert these post-petition damages, costs, and other expenses in this Court, seek their allowance as administrative-expense claims in these Bankruptcy Cases, and obtain other relief against the Debtors.[3] Furthermore, and

---

[3] The Adversary Complaint is attached to this Application as **Exhibit "1"**.

contemporaneously with filing the Adversary Complaint, NP Acquisition is also filing this Application in the Bankruptcy Cases in order to comply with the Administrative Claims Bar Date outlined in the June 30, 2023 *Notice of (A) Entry of Confirmation Order; (B) Occurrence of Effective Date; and (C) Deadline for Requests for Payment* [Doc. No. 545] (the "Effective Date Notice") and to provide proper notice of its administrative-expense claims, as required by the Effective Date Notice.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and this Court's *Order (A) Authorizing Debtors to Sell By Private Sale Certain of Debtors' Assets Free and Clear of Liens, Claims, and Encumbrances, With Such Interests to Attach to the Proceeds, (B) Authorizing the Assumption and Assignment of Certain Nonresidential Real Property Leases to Buyer, and (C) Granting Related Relief (NP Acquisition LLC)* [Doc. No. 185] (the "Sale Order") entered in the Bankruptcy Cases

5. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and 1334 and has been properly referred to this Court by the United States District Court for the District of Delaware (the "District Court") in accordance with 28 U.S.C. § 157(a) and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware,* dated February 29, 2012.

6. Venue is appropriate in the District of Delaware under 28 U.S.C. §§ 1408 and 1409.

7. This Court may enter a final order in this contested matter consistent with Article III of the United States Constitution. Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 7008-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware ("Local Rules"), NP Acquisition consents to entry of final orders and a judgment by the Court in this contested matter if it is determined that this

Court, absent consent of the parties, cannot enter a final order or judgment in this contested matter consistent with Article III of the United States Constitution.

## BACKGROUND FACTS

8.  NP Acquisition incorporates by reference in this Application the entire Adversary Complaint as if it were fully set forth in this Application. In particular, NP Acquisition incorporates in these Background Facts the Factual Background appearing in Section IV of the Adversary Complaint and reiterates the Factual Background *in toto*. NP Acquisition incorporates the Adversary Complaint in order to, among other things, eliminate unnecessary repetition and duplicate filings. All capitalized terms not otherwise defined in this Application have the meanings ascribed to them in the Adversary Complaint.

9.  As more fully explained in the Adversary Complaint, all the post-petition damages, costs, and other expenses incurred by NP Acquisition because of the Debtors' breaches-of-contract and torts in connection with the Transaction constitute Administrative Claims as defined in the Debtors' *Combined Disclosure Statement and Chapter 11 Plan of Liquidation Proposed by the Debtors and the Official Committee of Unsecured Creditors* [Doc. No. 457] (the "Plan").[4] The total amount of the Administrative Claims to which NP Acquisition is entitled is $2,583,746, plus pre-judgment and post-judgment interest, exemplary, consequential, and punitive damages, costs, and attorneys' fees (the "NP Acquisition Claim").

---

[4] This Court confirmed the Plan on June 30, 2023, pursuant to its *Findings of Fact, Conclusions, of Law, and Order (I) Approving the Adequacy of Disclosures on a Final Basis and (II) Confirming the Combined Disclosure Statement and Chapter 11 Plan of Liquidation Proposed by the Debtors and the Official Committee of Unsecured Creditors* [Doc. No. 543] (the "Confirmation Order"). As reflected in the Effective Date Notice, the Plan went effective on June 30, 2023 (the "Effective Date").

**RELIEF REQUESTED AND AUTHORITIES IN SUPPORT**

10. This Court should allow the NP Acquisition Claim as an administrative expense under Bankruptcy Code § 503(b)(1) because it meets all the requirements of an administrative expense under § 503(b)(1) and applicable law. The NP Acquisition Claim should therefore be characterized as an Administrative Claim under the Plan and paid in accordance with Plan § 7.1 once this Court has determined the allowed amount of the NP Acquisition Claim. (Plan, Doc. No. 457, § 7.1, p. 35).

11. Bankruptcy Code § 503(b) provides in part as follows:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate….

11 U.S.C. § 503(b)(1)(A). Administrative expenses of a debtor's bankruptcy estate under § 503(b) rank second among all priority claims the estate may incur. *Id*. § 507(a)(2). A post-petition claim against a bankruptcy estate ordinarily qualifies as an administrative expense under § 503(b)(1) if: 1) it arises out of a transaction between the creditor and the debtor's estate post-petition, and 2) the consideration supporting the claimant's right to the expense was supplied to and benefits the debtor's estate. *E.g., In re Energy Future Holdings Corp.,* 990 F.3d 728, 741 (3d Cir. 2021)*; Ellis v. Westinghouse Elec. Co., LLC,* 11 F.4th 221, 230 (2d Cir. 2021); *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986); *Camelot Music, Inc. v. MHW Advert. & Pub. Rels., Inc. (In re CM Holdings, Inc.)*, 264 B.R. 141, 149 (Bankr. D. Del. 2000).

A. **NP Acquisition's Damages Resulting From the Debtors' Breaches of the APA and Other Transaction Documents Qualify as Administrative Expenses Under Bankruptcy Code § 503(b)(1)(A).**

12. Damages flowing from the trustee's or debtor-in-possession's breach of a post-petition contract may be properly characterized as an administrative expense under Bankruptcy

5

Code § 503. *See, e.g., Fin. of Am., LLC v. Mortgage Winddown LLC (In re Ditech Holding Corp.)*, 630 F.Supp.3d 554, 566 (S.D.N.Y. 2022) (holding that § 503 "establishes a boundary line between 'expenses' arising from 'transaction[s] between the creditor and … debtor in possession' or the trustee and those arising from transactions between the creditor and debtor"). Post-petition contracts receive this preferential treatment in order to encourage parties to do business with the bankruptcy estate and to prevent unjust enrichment of the estate. *In re Wildwood Vills., LLC*, Case No. 3:20-bk-02569-RCT, 2022 WL 1599967, at *5 (Bankr. M.D. Fla. Jan. 21, 2022). As one court explained when examining an estate's breach of a post-petition lease, "[i]f landlords do not receive some assurance that their leases will be paid in full, then they will refuse to enter into leases with Chapter 11 tenants." *Devan v. Simon DeBartolo Grp. (In re Merry-Go-Round Enters., Inc.)*, 180 F.3d 149, 158 (4th Cir. 1999).

13.    With this principle in mind, bankruptcy courts typically conclude that the full measure of contract damages arising from a post-petition breach qualifies as an administrative expense. *E.g., Merry-Go-Round*, 180 F.3d at 161-62 (holding that all future rental damages flowing from the breach of a post-petition lease enjoyed administrative expense priority under § 503(b)(1)); *In re Sanchez Energy Corp.*, Case No. 19-34508, 2021 WL 920052, at *4-*5 (Bankr. S.D. Tex. Mar. 10, 2021) (granting administrative-expense priority to certain contractual charges owed to the creditor under a post-petition contract for keeping drilling rigs on standby for the debtor-in-possession even though the debtor never used the rigs in its post-petition drilling activities). "Ordinarily, a written post-petition agreement between a debtor-in-possession and a creditor constitutes inducement by the debtor in-possession. . . . Absent full payment, creditors would have little incentive to do business with the debtor-in possession.'" *Sanchez*, 2021 WL 920052, at *3 (citations omitted) (quoting *In re Whistler Energy II, LLC*, 931 F.3d 432, 444 (5th Cir. 2019) (citing *In re Airlift Int'l, Inc.*, 761 F.2d 1503, 1509 (11th Cir. 1985)). Thus, the total

damages resulting from the breach of the post-petition contract (rather than some lesser amount) merit administrative-expense treatment under most circumstances. *E.g., Merry-Go-Round*, 180 F.3d at 161-62.

14.     NP Acquisition's damages resulting from the Debtors' breaches of the APA and the other Transaction Documents meet both requirements for administrative-expense status under Bankruptcy Code § 503(b)(1). First, these damages arise out of transactions that occurred after the Bankruptcy Cases were filed on February 5, 2023 (the "Petition Date"). *See, e.g., CM Holdings*, 264 B.R. at 149; *see also Energy Future Holdings,* 990 F.3d at 741 (merger agreement entered into post-petition was a post-petition transaction between claimant and the debtor). As this Court well knows (since it entered the Sale Order), the Debtors and NP Acquisition executed the APA and all the other Transaction Documents post-petition, and the Debtors breached these agreements post-petition. Thus, the Transaction occurred entirely post-petition.

15.     Second, NP Acquisition provided significant value to the Debtors in the form of the Purchase Price and other consideration in exchange for the Purchased Assets and Store Leases, thereby directly benefitting the Debtors' bankruptcy estates. *See CM Holdings,* 264 B.R. at 151-52; *see also In re Enron Corp.*, No. 01-B-16034 (AJG), 2003 WL 1562201, at *3 (Bankr. S.D.N.Y. Mar. 17, 2003) (noting that if parties did not receive administrative priority for claims based on post-petition transactions with the trustee or debtor-in-possession, then "the third-parties would refrain from dealing with the debtor-in-possession, thereby inhibiting the reorganization effort and harming pre-petition creditors"). If NP Acquisition had declined to pursue the Transaction, then the Debtors would probably have sold the Purchased Assets at fire-sale prices (or just abandoned them) and rejected the Store Leases. NP Acquisition's involvement therefore conferred real value on the bankruptcy estates—a conclusion confirmed by the Court's own findings in the Sale Order. (*See* Sale Order, Doc. No. 185, D, pp. 3-4 ("the consideration provided by [NP Acquisition] . . . :

7

(i) was made in good faith; (ii) is the highest or otherwise best offer obtained for the Purchased Assets and will provide a greater recovery for the Debtors' estates than would be provided by any other alternative;. . . (v) is in the best interests of the Debtors' estates, the Debtors' creditors, and other parties in interest; and (vi) would not have been made or given by [NP Acquisition] absent the protections afforded to [NP Acquisition] by the [APA], the Bankruptcy Code, and this Order."). Accordingly, NP Acquisition's damages for the Debtors' breaches of the APA and other Transaction Documents meet the second prong of § 503(b)(1)'s test for administrative-expense status and should be allowed in these Bankruptcy Cases as Administrative Claims.

**B.      NP Acquisition's Damages Resulting From the Debtors' Post-Petition Torts Qualify as Administrative Expenses Under Bankruptcy Code § 503(b)(1)(A)**

16.    Similar to its treatment of post-petition, breach-of-contract claims, this Court has held that claims arising out of a debtor's commission of a tort during a bankruptcy case may also be treated as "actual and necessary" administrative expenses. *In re Hayes Lemmerz Int'l, Inc.*, 340 B.R. 461, 480 (Bankr. D. Del. 2006) *(citing Reading Co. v. Brown*, 391 U.S. 471, 482-85, 88 S. Ct. 1759, 20 L. Ed. 2d 751 (1968)) (holding that damages arising from a tort committed postpetition may be afforded administrative expense status). As the Third Circuit explained, "[F]airness may call for the allowance of post-petition tort claims as administrative expenses if those claims arise from actions related to the preservation of a debtor's estate despite having no discernable benefit to the estate." *In re Philadelphia Newspapers, LLC*, 690 F.3d 161, 173 (3d Cir. 2012) (citing *Reading*, 391 U.S. at 477), *cert. dismissed* 568 U.S. 1151 (2013). Thus, bankruptcy courts in the Third Circuit have granted requests for administrative expense claims arising from "a variety of tort actions." *Id*.

17.    Here, NP Acquisition's damages resulting from the Debtors' misrepresentations during the sale process, their interference with NP Acquisition's business relations with its

8

customers, and their conversion of NP Acquisition's assets all merit administrative-expense priority. *See id*. Holding otherwise would, *inter alia*, discourage parties from entering into transactions with debtors-in-possession or trustees in the future. *See Enron Corp.*, 2003 WL 1562201, at *8-9 (holding that a claim based on post-petition conversion of property by the debtor was entitled to administrative priority and explaining, "if a debtor-in-possession could induce third-parties to transact business with it and remain immune from liability for torts committed against them during the period the debtor continued to operate, it would discourage those parties from transacting business with the debtor and hinder the reorganization effort."); *In re Women First Healthcare, Inc.,* 332 B.R. 115, 124-26 (Bankr. D. Del. 2005) (recognizing that, under the U.S. Supreme Court's *Reading* doctrine, administrative-expense status could apply to damages arising out of the tort of negligent misrepresentation by a debtor-in-possession).

18.     For these reasons, the entire amount of the NP Acquisition Claim constitutes an administrative expense under Bankruptcy Code § 503(b)(1). NP Acquisition therefore requests that this Court determine that the NP Acquisition Claim is an Administrative Claim under the Plan and direct the Trustee to pay this Administrative Claim to NP Acquisition from the Trust Assets in accordance with, *inter alia*, the Plan, the Confirmation Order, the Trust Agreement, the Bankruptcy Code, and the Bankruptcy Rules. (Plan, Doc. No. 457, § 7.1, p. 35).

## **RESERVATION OF RIGHTS**

19.     NP Acquisition reserves the right to further amend, modify, or supplement this Application at any time and to request the postponement and/or adjournment of any hearing on the Application. NP Acquisition reserves all its rights in connection with this Application, the Transaction, the Transaction Documents (including the APA), and the Adversary Complaint. Finally, NP Acquisition also reserves all rights it may have as a creditor in these Bankruptcy Cases.

## NOTICE OF SERVICE OF APPLICATION

20. Notice of this Application shall be provided in accordance with the notice requirements outlined in the Effective Date Notice as follows: (i) <u>counsel to the Debtors</u>: McDonald Hopkins LLC, 300 North LaSalle Street, Suite 1400, Chicago, Illinois 60654 (Attn: David Agay (dagay@mcdonaldhopkins.com) and Marc Carmel (mcarmel@mcdonaldhopkins.com)); (ii) <u>co-counsel to the Debtors</u>: Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 1980 (Attn: Andrew Magaziner (amagaziner@ycst.com)); (iii) <u>counsel to the Committee</u>: Kelley Drye & Warren LLP, 3 World Trade Center, 175 Greenwich Street, New York, New York 10007 (Attn: James S. Carr (jcarr@kelleydrye.com) and Maeghan J. McLoughlin (mmcloughlin@kelleydrye.com)); (iv) <u>co-counsel to the Committee</u>, Potter Anderson & Corroon LLP, 1313 N. Market Street, 6th Floor, Wilmington, Delaware 19801-6108 (Attn: Christopher Samis (csamis@potteranderson.com) and Aaron Stulman (astulman@potteranderson.com)); (v) <u>counsel to the DIP Lenders and the Stalking Horse Purchaser</u>, Dechert LLP, 1095 Avenue of the Americas, New York, New York 10036 (Attn: Shmuel Vasser (shmuel.vasser@dechert.com) and Stephen Wolpert (stephen.wolpert@dechert.com)); (vi) <u>co-counsel to the DIP Lenders and the Stalking Horse Purchaser</u>, Richards, Layton & Finger, P.A., P.O. Box 551, Wilmington, Delaware 19899 (Attn: Russell Silberglied (silberglied@rlf.com) and Brendan Schlauch (schlauch@rlf.com)); and (vii) <u>the U.S. Trustee</u>, 855 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Rosa Sierra-Fox (rosa.sierra-fox@usdoj.gov) and Linda Casey (linda.casey@usdoj.gov)).

21. In addition to the parties required by the Effective Date Notice, notice of the Application will also be provided to <u>Steven Balasiano</u>, Trustee of The IPP Liquidating Trust, c/o MHR Advisory Group, LLC, 2018 West Street, Brooklyn, New York, 11223. A copy of this Application is also available on the Court's website: www.deb.uscourts.gov. Interested parties may

10

obtain additional copies by calling 512-305-4726.

## CONCLUSION

WHEREFORE, NP Acquisition requests that this Court enter an order: (i) allowing the NP Acquisition Claim in the full amount due as of the date of allowance as an Administrative Claim (as defined in the Plan) under Bankruptcy Code § 503(b)(1)(A); (ii) ordering the Trustee to pay this Administrative Claim to NP Acquisition from the Trust Assets in accordance with, *inter alia*, the Plan, the Confirmation Order, the Trust Agreement, the Bankruptcy Code, and the Bankruptcy Rules; and (iii) granting NP Acquisition all other and further relief to which NP Acquisition may be entitled at law or equity.

<table>
<tr><td>Dated: July 31, 2023<br>Wilmington, Delaware</td><td>**SULLIVAN · HAZELTINE · ALLINSON LLC**<br><br>*/s/ William A. Hazeltine*<br>_____<br>William D. Sullivan (No. 2820)<br>William A. Hazeltine (No. 3294)<br>919 North Market Street, Suite 420<br>Wilmington, DE 19801<br>Tel: (302) 428-8191<br>Fax: (302) 428-8195<br>Email:  bsullivan@sha-llc.com<br>         whazeltine@sha-llc.com<br><br>-and-<br><br>Jonathan W. Young<br>LOCKE LORD LLP<br>701 8th Street, N.W., Suite 500<br>Washington, D.C. 20001<br>Tel: 202-220-6900<br>Fax: 855-595-1190<br>Email:  jonathan.young@lockelord.com<br><br>-and-<br><br>W. Steven Bryant<br>LOCKE LORD LLP<br>300 Colorado Street, Ste. 2100<br>Austin, Texas 78701<br>Tel: 512-305-4726<br>Direct Fax: 512-305-4800<br>Email:  sbryant@lockelord.com<br><br>*Counsel for NP Acquisition LLC*</td></tr>
</table>